Henry SHORE, Regional Director of the Sixth Region of the National Labor Relations Board, for and on behalf of the NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

GENERAL TEAMSTERS, CHAUFFEURS AND HELPERS LOCAL NO. 249, affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Respondent.

Civ. A. No. 17586.

United States District Court
W. D. Pennsylvania.

Feb. 6, 1959.

Allen R. DeLong, Washington, D. C., for N. L. R. B.

Charles C. Hewitt, Pittsburgh, Pa., for Fried & Reineman Packing Co.

Ben Paul Jubelirer, Pittsburgh, Pa., for respondent.

GOURLEY, Chief Judge.

In this proceeding, Henry Shore, Regional Director of the Sixth Region of the National Labor Relations Board (herein called the Board), petitions the court for a temporary injunction pursuant to Section 10($l$) of the National Labor Relations Act, as amended 29 U.S. C.A. § 160($l$) (herein called the Act), pending the final disposition of the matters involved which are to be heard by the Board on February 24, 1959.

The matter before the Board relates to whether or not the respondent has engaged in unfair labor practices in picketing the plant facilities of management under circumstances which it is contended constitute a secondary boycott on the part of the respondent.

The jurisdiction of the court stems from the provisions of Section 10($l$) of the Act, and under the provisions of law it is the duty of the District Court to determine whether or not reasonable cause exists to believe that the charges of a secondary boycott are true. It must be kept in mind the District Court is not

required to find the charges made to be true or untrue, but to determine whether reasonable cause exists to believe the charges to be true.

Fried & Reineman Packing Company (hereinafter referred to as F & R) has been engaged in the meat packing business in the City of Pittsburgh for a number of years and had employed its own truck drivers and helpers to haul its meat products. The bargaining agreement between F & R and the respondent expired September 30, 1958, and after extended negotiations with the help of a state and federal conciliator, a satisfactory agreement between the respondent and F & R could not be effectuated. As a result thereof, F & R through the actions of appropriate corporate officials determined that the services heretofore performed by the truck drivers and helpers represented by the respondent would no longer be carried on by the company. For economic reasons it was decided that arrangements would be made with the Kenny Motor Express, Inc. (hereinafter referred to as Kenny), a holder of a certificate from the Interstate Commerce Commission and the Pennsylvania Public Utility Commission, which was engaged in the hauling of meats and similar products, to perform the services formerly carried on by the truck drivers and helpers represented by the respondent. When Kenny notified the respondent that it intended to perform the services for F & R, the respondent engaged in the picketing of the premises of F & R.

Counsel have not submitted to the court any authority or proceeding of a similar nature and it appears that the facts as they exist in the instant case are matters of first impression.

However, in my considered judgment, from a review of the proceeding identified as International Brotherhood of Teamsters et al. v. Polar Water Company, Case No. 6–CC–143, 120 NLRB No. 25, the Board indicates that where services heretofore performed by employees of management are discontinued and said services are to be administered by an independent contractor, that a secondary boycott would exist where the former employees of management picket the premises of their former employer.

All parties have been afforded a full and complete opportunity to be heard, to examine and cross-examine witnesses, to present evidence bearing on the issues and to act and submit briefs on the evidence and the law, and I conclude that reasonable cause exists in the instant proceeding to believe the charges to be true and that a duty and obligation exists on the part of the court to grant the temporary injunction pending the disposition of the proceeding before the Board. Shore, for and on behalf of National Labor Relations Board v. Building & Construction Trades Council of Pittsburgh, Pa., 3 Cir., 173 F.2d 678, 8 A.L.R. 2d 731.

Upon the entire record the Court enters the following findings of fact and conclusions of law:

### Findings of Fact

1. Petitioner is Regional Director of the Sixth Region of the Board, an agency of the United States, and filed this petition for and on behalf of the Board.

2. Respondent, General Teamsters, Chauffeurs and Helpers Local No. 249, affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, an unincorporated association, is a labor organization within the meaning of Sections 2(5), 8(b) and 10(l) of the Act, 29 U.S.C.A. §§ 152(5), 158(b), 160(l), has its principal office in this judicial district and is engaged within this judicial district in transacting business and in promoting and protecting the interests of its employee members.

3. On or about December 19, 1958, F & R, pursuant to the provisions of the Act, filed with the Board, a charge alleging that respondent has engaged in, and is engaging in, unfair labor practices within the meaning of Section 8(b) (4) (A) of the Act.

4. Said charge was referred to petitioner as Regional Director of the Sixth Region of the Board for investigation

and was investigated by petitioner and under his supervision.

5. The court must consider the public interest in connection with the dispute which exists, the interests of F & R, the interests of the respondent and the interests of Kenny, all of whom are involved to one degree or another in the determination of the conclusion as to whether or not reasonable cause exists to believe that the charges of the petitioner that a secondary boycott exists are true.

6. There is, and petitioner has, reasonable cause to believe that:

(a) F & R, a Pennsylvania corporation, is engaged in the meat packing business and maintains offices and a processing plant at Pittsburgh, Pennsylvania. In the conduct of said business, F & R annually receives livestock, shipped to its Pittsburgh plant from points and places outside the Commonwealth of Pennsylvania, valued at more than $7,000,000.

(b) Prior to November 10, 1958, F & R employed truck drivers, who were represented by respondent, to haul its products. On or about November 10, 1958, F & R decided that for economic reasons it would engage an independent trucking contractor to perform its hauling and, on or about November 12, 1958, notified respondent that it intended to do so and intended to contract with Kenny to perform such services.

(c) Thereupon, respondent arranged to confer with Kenny for the purpose of negotiating with respect to the terms and conditions of employment, by Kenny, of the former employees of F & R who had performed said hauling; and, thereafter, respondent held several conferences and discussions in an effort to determine if any or all of the thirty-eight former employees of F & R could be absorbed or hired by Kenny in the performance of Kenny's independent contract with F & R.

(d) The efforts extended by Kenny and respondent failed to materialize to the satisfaction of said parties, since no assurance would be given by Kenny as to when, how or the number of the former employees of F & R that would be absorbed or used by Kenny. Kenny would only say that he would use such number of said employees in rendering the services required for F & R that his regular employees would be unable to perform. This was not found satisfactory or acceptable to the respondent.

(e) In the course of said discussions, respondent made demands upon Kenny for conditions which Kenny did not find satisfactory, and Kenny made suggestions which respondent did not accept. On or about December 5, 1958, following a number of said conferences with Kenny, respondent rejected Kenny's suggestions and, as a result, no further conferences were pursued.

(f) Kenny, unquestionably, is an independent contractor and no control or supervision, directly or indirectly would be exercised by F & R other than directing Kenny what merchandise to haul and where it is to be secured and delivered. Kenny furthermore by virtue of the authority delegated to him by the Interstate Commerce Commission and Pennsylvania Public Utility Commission is required to charge the rates approved by said Commissions, and could not refuse without just cause to perform the hauling services requested by F & R.

(g) On or about December 17, 1958, Kenny informed respondent that it intended to haul the F & R products, and approximately three hours later, respondent, in furtherance of its demands upon Kenny, referred to herein, began picketing the premises of F & R. The picketing or threat of picketing will exist if Kenny endeavors to haul for F & R.

(h) By the acts and conduct set forth herein, and by other means, including orders, directions, instructions, requests and appeals, respondent has engaged in, and induced and encouraged employees of F & R, and Kenny to engage in, strikes or concerted refusals in the course of their employment to use, manufacture, process, transport, or otherwise handle or work on goods, articles, ma-

**820**

terials, or commodities, or to perform services.

(i) An object of respondent's acts and conduct set forth above was and is: to force or require F & R to cease doing business with Kenny and to force F & R to rehire employees to perform services it no longer desires or needs.

7. The acts and conduct of respondent set forth above, occurring in connection with F & R's operations, have a close, intimate, and substantial relation to trade, traffic, and commerce among the several states and tend to lead and do lead to labor disputes burdening and obstructing commerce and the free flow of commerce.

8. It may fairly be anticipated that unless restrained respondent will continu unless restrained respondent will continue and repeat the acts and conduct set forth herein, or similar or like or related acts and conduct.

Conclusions of Law

1. This court has jurisdiction of the parties and of the subject matter of this proceeding and is empowered to grant injunctive relief under Section 10(l) of the Act.

2. Respondent is a labor organization within the meaning of Sections 2(5), 8(b) and 10(l) of the Act.

3. There is, and petitioner has, reasonable cause to believe that:

■ (a) F & R is engaged in commerce within the meaning of Section 2, subsections (6) and (7) of the Act.

■ (b) Respondent has engaged in unfair labor practices within the meaning of Section 8(b) (4) (A) of the Act, affecting commerce within the meaning of Section 2, subsections (6) and (7) of the Act and a continuation of such practices will impair the policies of the Act as set forth in Section 1(b) thereof.

4. To preserve the issues for the determination of the Board as provided in the Act and to avoid irreparable injury to the policies of the Act and to the public interest, it is appropriate, just and proper, that, pending final disposition of the matters involved pending before the Board, respondent, its officers, agents, representatives, servants, employees, attorneys, and all members or other persons acting in concert or participation with it, be enjoined and restrained from the commission and continuance of the acts and conduct set forth in the findings of fact herein determined and like or related acts or conduct, the commission of which in the future is likely or may fairly be anticipated from respondent's acts and conduct in the past.

An appropriate order is entered.