NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL UNION NO. 12, AFL-CIO, Respondent.

No. 16962.

United States Court of Appeals Ninth Circuit.

July 20, 1961.

Before BARNES and HAMLIN, Circuit Judges, and WALSH, District Judge.

WALSH, District Judge.

This case is before us upon a petition for enforcement of an order of the National Labor Relations Board (hereinafter "the Board") issued against International Union of Operating Engineers, Local Union No. 12, AFL–CIO, (hereinafter "respondent") following a decision by the Board that respondent violated Section 8(b) (4) (A) and (B) of the National Labor Relations Act [1] [61 Stat. 141; 29 U.S.C.A. § 158(b) (4) (A) and (B)]. The proceedings before the Board began with the issuance of a complaint by the General Counsel of the Board and the filing of an answer thereto by respondent. Thereafter, the parties stipulated the facts in connection with the charges against respondent, waived the taking of any testimony and the hearing and intermediate report processes before a Trial Examiner, and agreed that the matter might be transferred forthwith to the Board. Pursuant to the agreement of the parties, the Board transferred the proceedings to itself, fixed a time for filing briefs, and gave directions regarding requests for oral argument. Only the General Counsel filed a brief, and neither party requested argument.

From the stipulated facts it appeared that Pacific Engineers & Surveyors, Inc. and Kenneth W. Wright (hereinafter, respectively, "Pacific" and "Wright") were members of Tri County Association

Stuart Rothman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Allison W. Brown, Jr., and Hans J. Lehmann, Attys., N. L. R. B., Washington, D. C., for petitioner.

Charles K. Hackler, Los Angeles, Cal., for respondent.

1. The case arose under the provisions of the section as it existed before its amendment by the Labor-Management Reporting and Disclosure Act of 1959 (73 Stat. 519; Public Law 86–257, 86th Cong., 1st S.). The section as it existed prior to amendment, and to the extent that its terms are relevant here, reads as follows:

"Sec. 8(b) It shall be an unfair labor practice for a labor organization or its agents— * * *

"(4) to engage in, or to induce or encourage the employees of any employer to engage in, a strike or a concerted refusal in the course of their employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services, where an object thereof is: (A) forcing or requiring any employer or self-employed person to join any labor or employer organization or any employer or other person to cease using, selling, handling, transporting, or otherwise dealing in the products of any other producer, processor, or manufacturer, or to cease doing business with any other person; (B) forcing or requiring any other employer to recognize or bargain with a labor organization as the representative of his employees unless such labor organization has been certified as the representative of such employees under the provisions of section 9; * * *"

of Civil Engineers and Land Surveyors (hereinafter "Tri County"), an association of employers engaged in civil engineering and land surveying work in the State of California. Tri County engaged in collective bargaining and in the negotiation of labor agreements on behalf of its members, including Pacific and Wright; and in the spring of 1959 respondent was engaged in a campaign to obtain recognition as the collective bargaining representative of the employees of members of Tri County, including the employees of Pacific and Wright. However, respondent was not at any time material in the case the certified bargaining representative for the employees of any employer-member of Tri County.

In March and April, 1959, Lindero Investment Co., Inc., Rancho Estates, and Sinton & Savage (hereinafter, respectively, "Lindero", "Rancho", and "Sinton") were severally engaged in the business of land development. Lindero and Rancho in their operations used the services of four construction companies, viz.: William C. Wyckoff & Sons, Guido O. Ferrini, L. E. Webb Construction Co., and M. J. Hermreck (hereinafter, respectively, "Wyckoff", "Ferrini", "Webb", and "Hermreck"). Sinton, being engaged in construction work as well as land development, used its own construction employees.

Wyckoff, Ferrini, Webb, Hermreck, and Sinton each employed members of respondent union to operate construction power equipment, and each of these companies had a collective bargaining contract with respondent. A clause common to all of the collective bargaining contracts provided that: "If the Contractors, parties hereto, sub-contract job site work falling within the recognized jurisdiction of the Union, provisions shall be made in each sub-contract for the compliance by said sub-contractor with terms not less than those contained herein"; and wage rates specified in each of the collective bargaining contracts for members of survey crews were substantially higher than the rates paid by Pacific and Wright to comparable classifications of their employees.

About March 26, 1959, two of respondent's agents induced and encouraged Wyckoff's employees to engage in a strike on work being performed by Wyckoff for Lindero. The employees were instructed by respondent's agents not to work because the surveyors on the job site, who were employees of Pacific performing work pursuant to a contract between Lindero and Pacific, were nonunion. Respondent's agent Smith also told Wyckoff that respondent was closing down the job, and that respondent was standing on its subcontracting clause.

About March 31, 1959, an agent of respondent induced and encouraged employees of Ferrini, Webb and Hermreck to engage in a strike on work being performed by those employers for Rancho. Respondent's agent told some of the employees that they were not to work because the surveyors on the job site who were employees of Wright, performing work pursuant to a contract between Rancho and Wright, were not union men. Respondent's agent also told Hermreck that Hermreck's men could not work on the Rancho job because of the applicability of the subcontractor clause in the collective bargaining agreement between respondent and Hermreck.

About April 3, 1959, an agent of respondent induced and encouraged employees of Sinton to engage in a strike on a land development project being carried on by Sinton, telling the employees that they could not work so long as the surveyors on the job site, who were employees of Pacific performing work pursuant to a contract between Sinton and Pacific, were working on the project. About the same time, the agent informed Sinton that his men could not work on the job because the subcontract clause applied.

Upon the basis of the stipulated facts, the Board found: (a) that respondent induced the work stoppage of Wyckoff's

employees about March 26, 1959, and the work stoppage of Sinton's employees about April 3, 1959, with the object of causing Lindero and Sinton to cancel their contracts with Pacific; (b) that respondent induced the work stoppage of the employees of Ferrini, Webb, and Hermreck about March 31, 1959, with the object of causing Rancho to cancel its contract with Wright; and (c) that respondent induced all of the work stoppages with the further object of forcing Pacific and Wright to recognize or bargain with respondent on behalf of their employees. In making these findings, the Board properly gave considerable weight to the fact that at the construction sites where work was being performed by the contractors for Lindero and Rancho, respondent told the employees of the contractors that they were to stop work because the employees of Pacific and Wright were nonunion; and respondent told Sinton's employees they could not work so long as the surveyors on the job were employees of Pacific. The Board concluded that, by its conduct, respondent had violated Section 8(b) (4) (A) and (B) of the Act and, since respondent was conducting a campaign to obtain recognition as collective bargaining representative of the employees of all employer-members of Tri County, the Board ordered respondent to cease and desist from the unfair labor practices found, not only as they might be directed against Pacific and Wright, but against other employer-members of Tri County as well.

Respondent does not contest the Board's findings that it violated Section 8(b) (4) (A) and (B) of the Act by calling strikes against Wyckoff on March 26, 1959 and against Ferrini, Webb, and Hermreck on March 31, 1959; and respondent offers its consent to the entry of a decree enforcing the Board's order *excepting those provisions contained in the order relating to the strike by Sinton's employees.* As to the Sinton aspect of the case, respondent insists that the findings and conclusions of the Board cannot stand because, in calling the strike of Sinton's employees, respondent was merely seeking to compel compliance by Sinton with the subcontracting clause contained in Sinton's agreement with respondent.

■■■ If we accept, as we must in view of the evidence before the Board, the Board's finding that in inducing the strike against Sinton respondent had as objectives to force Sinton to cancel its contract with Pacific and to force Pacific to recognize or bargain with respondent on behalf of Pacific's employees, we cannot sustain the position taken by respondent with respect to the "Sinton portion" of the Board's order. Respondent's conduct in inducing the work stoppage by Sinton's employees was properly found by the Board to be unlawful in view of respondent's objectives and, consequently, such conduct may not be justified by a claim that Sinton had breached its agreement with respondent. An attempt to force one employer to sever business relations with another person is not protected by virtue of reliance upon a contract with the employer. N. L. R. B. v. Bangor Building Trades Council, 1 Cir., 278 F.2d 287, 290. "The realities of coercion are not altered simply because it is said that the employer is forced to carry out a prior engagement rather than forced now to cease doing business with another. * * * [T]he contract cannot be enforced by the means specifically prohibited in § 8(b) (4) (A)." Local 1976, United Brotherhood of Carpenters v. N. L. R. B., 357 U.S. 93, 106, 108, 78 S.Ct. 1011, 1019, 2 L.Ed.2d 1186. See N. L. R. B. v. Local 294, International Brotherhood of Teamsters, 2 Cir., 273 F. 2d 696, 697–698; N. L. R. B. v. Local 47, International Brotherhood of Teamsters, 5 Cir., 234 F.2d 296, 300.

■■ Nor is respondent's position here strengthened by its argument that its activities insofar as Sinton is concerned were "primary" rather than "secondary". Section 8(b) (4) (A) and (B) of the Act broadly prohibits a strike "where

an object thereof is * * * forcing or requiring any * * * person * * * to cease doing business with any other person" or "where an object thereof is * * * forcing or requiring any other employer to recognize or bargain with a labor organization as the representative of his employees unless such labor organization has been certified as the representative of such employees". And if one alternative purpose of a strike is an unlawful one within the purview of Section 8(b) (4) (A) and (B), that purpose must be regarded as "an object" within the compass of the section. N. L. R. B. v. Denver Building etc. Council, 1951, 341 U.S. 675, 71 S.Ct. 943, 95 L.Ed. 1284.

Finally, we point out that the validity of the Board's findings and order regarding respondent's activities directed against Sinton are not affected by the enactment of Section 8(e), added by Section 704(b), Labor-Management Reporting and Disclosure Act of 1959 [2] [73 Stat. 543; 29 U.S.C.A. § 158(e)]. A proviso of the new Section 8(e) expressly validates in the construction industry subcontracting clauses of the type involved here, but it goes no further than according such clauses validity. The proviso does not legalize strikes or other coercive action to enforce such clauses. N. L. R. B. v. Bangor Building Trades Council, supra, 278 F.2d at pages 290–291, note 4; Lebus for and on Behalf of N. L. R. B. v. International Union of Operating Engineers, etc., D.C.E.D.La. 1960, 188 F.Supp. 392, 394.

The petition for the enforcement of the Board's order is granted.

2. Reading, to the extent relevant here:
 "(e) It shall be an unfair labor practice for any labor organization and any employer to enter into any contract or agreement, express or implied, whereby such employer ceases or refrains or agrees to cease or refrain from handling, using, selling, transporting or otherwise dealing in any of the products of any other employer or to cease doing business with any other person, and any contract or agreement entered into heretofore or

hereafter containing such an agreement shall be to such extent unenforcible and void: *Provided*, That nothing in this subsection (e) shall apply to an agreement between a labor organization and an employer in the construction industry relating to the contracting or subcontracting of work to be done at the site of the construction, alteration, painting, or repair of a building, structure, or other work: * * *"