Ivan C. McLEOD, Regional Director of the Second Region of the National Labor Relations Board, for and on Behalf of the NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

BAKERY, PASTRY AND FROZEN BAKED PRODUCTS DRIVERS AND HELPERS, LOCAL 802, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, Respondent.

No. 62 C 298.

United States District Court
E. D. New York.

April 11, 1962.

Jacques Schurre, New York City (Stuart Rothman, Dominick L. Manoli, Winthrop A. Johns, Washington, D. C., and Samuel M. Kaynard, New York City, of counsel), for Regional Director, in support of motion for injunction.

Bruce H. Simon, New York City (Cohen & Weiss, New York City, of counsel), for respondent, opposed.

DOOLING, District Judge.

The Regional Director has moved for an injunction against respondent's picketing of a bakery that the charging party, Wilson-Jacobi, Inc., is just opening in Syosset, Long Island. A hearing has

been held and the facts have been separately found.

The issue most sharply contested is whether the picketing is primary picketing in lawful exercise of respondent's right to seek to organize Wilson-Jacobi or is picketing that constitutes an unfair labor practice on respondent's part under 29 U.S.C.A. § 158(b) (4) (i), (ii) (B).

Wilson-Jacobi's plan of operation is to make baked products and sell them through numerous retail outlets of its own located as "leased departments" in supermarkets. It has contracted to have all the transportation services it needs, to move its baked products from the bakery to the supermarkets, rendered to it by an independent contractor, Alho Corporation, who will supply the equipment and employ and direct the men. Wilson-Jacobi has signed a collective bargaining agreement covering all its production, maintenance, sales and miscellaneous employees, including those engaged in the slicing, packing, shipping and receiving operations. Alho Corporation is unionized but it has had no operation in Syosset heretofore and the local representing its existing employees has no interest in representing any men Alho may hire to staff a new trucking operation based at Syosset.

At about the time Wilson-Jacobi had completed its "practice" baking, preparatory to going into commercial production, respondent, which traditionally represents drivers for independent bakers, established a two man picket line at Wilson-Jacobi's bakery; the picket signs appealed to the Wilson-Jacobi employees to join respondent. Respondent knew generally that Wilson-Jacobi was unionized at least as to its production and maintenance people but expected that it would hire drivers and that respondent could bid to represent them and the miscellaneous employees. It soon learned of the Alho arrangement and of Alho's local's lack of interest; ultimately respondent had an inconclusive meeting with Alho at which it proposed terms unsatisfactory to Alho and also insisted that any contract with Alho be counter-signed by Wilson-Jacobi so that if the baker changed truckers the contract would endure. (Unlike other Teamster locals respondent has no contracts with any trucking companies or truck rental companies; its contracts are all with baked goods companies, covering their drivers and some miscellaneous employees.)

The picketing continued from February 26th until restrained on March 23, 1962. It impeded deliveries, resulted in a temporary walk-out by the production and maintenance employees and quickly caused Wilson-Jacobi to shut down production and cancel its schedule for initiating commercial distribution. Respondent has not made any demonstrated progress in its organizational effort and has resorted to none of the wonted solicitations of membership beyond establishing its picket line.

■ Petitioner's showing places its case well within the area in which the National Labor Relations Board can find that an unfair labor practice occurred. McLeod v. Drivers and Chauffeurs Local Union No. 816, S.D.N.Y.1959, 178 F. Supp. 288, aff'd, 2nd Cir.1960, 277 F.2d 800; Drivers and Chauffeurs Local Union No. 816 v. N. L. R. B., 2nd Cir.1961, 292 F.2d 329; Shore for and on Behalf of N. L. R. B. v. General Teamsters, Chauffeurs and Helpers Local No. 249, W.D.Pa.1959, 169 F.Supp. 817; cf. Haughton v. International Woodworkers of America, D.Or.1958, 168 F.Supp. 273. The differentiation between primarily exerted pressures and "secondary" economic consequences, useful in analysis, is not substantively dispositive of every case. Cf. N. L. R. B. v. International Union of Operating Engineers, 9th Cir. 1961, 293 F.2d 319; Samoff for and on Behalf of N. L. R. B. v. International Longshoremen's Ass'n, Local 1694, D. Del.1960, 188 F.Supp. 308. Room evidently remains for inhibition of an essentially secondary pressure produced at one remove from the scene at which a primary pressure of the permitted sort can be exerted on the primary employer. Cf. Local 1976, United Brotherhood of

Carpenters and Joiners of America etc. v. N. L. R. B., 1958, 357 U.S. 93, 78 S.Ct. 1011, 2 L.Ed.2d 1186; Penello v. Wilmington Bldg. & Constr. Trades Council, D.Del.1959, 177 F.Supp. 413; compare N. L. R. B. v. Washington-Oregon Shingle Weavers' Dist. Council, 9th Cir.1954, 211 F.2d 149. Where, as here, the front of the solicitation of membership, with its consequent of secondary impacts, is intrinsically somewhat ambiguous in its direction, there is a chance that two permitted points of primary pressure coexist, but in that uncertain area the probabilities are strongly against respondent. Cf. N. L. R. B. v. Local 810, 2nd Cir. January 12, 1962, 299 F.2d 636; United Steelworkers of America, etc. v. N. L. R. B., D.C.Cir.1961, 294 F.2d 256, 259–260; Truck Drivers & Helpers Local Union No. 728, etc. v. Empire State Exp., Inc., 5th Cir.1961, 293 F.2d 414; Local No. 24, etc., v. N. L. R. B., 1959, 105 U.S.App.D.C. 271, 266 F.2d 675; Douds v. Metropolitan Federation of Architects, S.D.N.Y.1948, 75 F.Supp. 672. See also the Teamster local cases first cited supra. Here it may well be that respondent's procedure suffers irrecoverably from the absence of any distinct and attainable primary objective. Cf. N. L. R. B. v. Local 691, 7th Cir.1959, 270 F.2d 696. Compare National Labor Relations Board v. Denver Bldg. Council, 1951, 341 U.S. 675, 688, 71 S.Ct. 943, 95 L.Ed. 1284. The shadow of Section 8(b) (7) of the Act falls heavily on respondent's access to the lawful "primary picketing" proviso of Section 8(b) (4).

■ No problem arises under McLeod v. Business Machine and Office Appliance Mechanics, 2nd Cir. February 7, 1962, 300 F.2d 237. The Court does not there remove the function of the Board to the injunction court but emphasizes that injunctive relief cannot properly be sought where the requisite probability that the Board will find that an unfair labor practice has been committed dissolves in a demonstration that the Board would have to alter the bent of its decisions to do so. Here the record is such that a decision of unfair labor practice is within the statutory competency of the Board, probable of occurrence under the facts adduced in the injunction court and evidently supportable on appeal under the available evidence and readings of the statute. Certainty of that result is not for the injunction court to determine for a jurisdictional competency to do that has not been distributed to it by the scheme of the statute. Cf. Local 761, International Union of Electrical, etc., Workers v. National Labor Relations Board, 1961, 366 U.S. 667, 674 et seq., 81 S.Ct. 1285, 6 L.Ed.2d 592; Friendly, Definition of Administrative Standards, 75 Harv.L.Rev. 863, 867–872, 891.

The requested injunction will be granted.