**LOCAL UNION NO. 48 OF SHEET METAL WORKERS INTERNATIONAL ASSOCIATION, an unincorporated association, Plaintiff,**

v.

**The HARDY CORPORATION, a corporation, Defendant.**

Civ. A. No. 10299.

United States District Court
N. D. Alabama, S. D.
May 21, 1963.

1. GX50-A.

Jerome A. Cooper, Cooper, Mitch & Crawford, Birmingham, Ala., for plaintiff.

Mark L. Taliaferro, Moore, Thomas, Taliaferro, Forman & Burr, Birmingham, Ala., for defendant.

ALLGOOD, District Judge.

This is a suit for damages for the alleged violation of a provision of a collective bargaining agreement between an employer and a labor organization, representing employees within the Northern District of Alabama in an industry affecting commerce as defined in Chapter 7, Title 29 U.S.C. In addition, plaintiff demands enforcement of the provision allegedly violated by the defendant, and plaintiff demands a declaration of its rights under the terms of the provision under 28 U.S.C. § 2201. The case has been submitted to the Court on the pleadings, briefs, and on oral argument of counsel for the respective parties.

This Court has jurisdiction of the cause under 29 U.S.C. § 185(a) and (c), and under 28 U.S.C. § 2201.

The defendant's answer to the complaint included a counterclaim for damages, over which this Court has jurisdiction under 29 U.S.C. § 187(b), as amended.

The provision of the collective bargaining agreement allegedly violated by the defendant corporation is a so-called "hot cargo" provision. By the terms of the provision, the employer agreed with the union that no work, of the nature specified in the collective bargaining agreement, would be subcontracted to any person who failed to agree in writing to comply with the terms of the collective bargaining agreement relating to conditions of employment.

The hot cargo clause was voluntarily and legally entered into by the parties under the construction industry proviso to 29 U.S.C. § 158(e) [Sec. 8(e), "Labor Management Relations Act", 1947, as amended, 1959, hereinafter sometimes referred to as "L.M.R.A."].

The defendant corporation allegedly violated the terms of the hot cargo provision by subcontracting certain work to a contractor who was not required to agree to abide by the terms of the collective bargaining agreement relating to conditions of employment.

There has been no picketing of the defendant corporation by the plaintiff, and no work stoppage has been induced by the plaintiff.

Apparently, the grievance procedure specified in the collective bargaining agreement has been complied with as far as possible. However, the only issue that was determined, if any, was that the defendant had violated the terms of the hot cargo provision.

The defendant, in its answer and counterclaim, contends, in part, that the hot cargo provision is unenforceable; and that the bringing of this lawsuit is unlawfully coercive, and therefore, an unfair labor practice—under 29 U.S.C. § 158(b) (4) (ii) (B), as amended [Sec. 8(b) (4) (ii) (B), "L.M.R.A.", 1947, as amended, 1959]—for which it is entitled to recover damages under 29 U.S.C. § 187, as amended [Sec. 303, "L.M.R.A.", 1947, as amended, 1959].

The plaintiff has filed a motion to dismiss the counterclaim of the defendant and for summary judgment against the defendant.

The questions raised at this stage of the pleadings are as follows:

1. Whether a hot cargo agreement, which is otherwise valid under the construction industry proviso to Section 8 (e), "Labor Management Relations Act", 1947, as amended, 1959 [29 U.S.C. § 158 (e), as amended], is enforceable by a legal proceeding, such as is here involved.

2. Whether the act of the union, in bringing this lawsuit against the employer, is an unfair labor practice. Specifically, whether the conduct in question amounts to a threat or coercion by the union, the object of which is to force or require the defendant to cease doing business with a subcontractor, within the purview of Section 8(b) (4) (ii) (B), "L.M.R.A.", 1947, as amended, 1959 [29 U.S.C. § 158(b) (4) (ii) (B), as amended].

Hot cargo clauses are, in substance, either expressly or impliedly designed to prevent employers—with whom a union has entered into a collective bargaining agreement—from subcontracting work to non-union employers; or, as in this case, to prevent an employer from subcontracting work to any employer, who falls within the classification set forth in the collective bargaining agreement, without first having secured a promise from the subcontractor that it will abide by the terms of the collective bargaining agreement.

Prior to the 1959 amendments to the "Labor Management Relations Act" of 1947, such agreements were held to be valid, notwithstanding the argument, often advanced, that "hot cargo" clauses were, or would ultimately result in, a violation of Section 8(b) (4), "L.M.R.A." of 1947 [29 U.S.C. § 158(b) (4)]. Local 1976, United Broth. of Carpenters and Joiners of America, AFL v. National Labor Relations Board, 357 U.S. 93, 78 S.Ct. 1011, 2 L.Ed.2d 1186 (1958) (Sand Door case). However, the agreement was valid only when it had been voluntarily entered into by the employer. It was held to be an unfair labor practice if the union used any of the means proscribed by Section 8(b) (4), supra, to

either acquire the hot cargo clause or to enforce the hot cargo clause. See Local 1976, United Broth. of Carpenters and Joiners of America, AFL v. National Labor Relations Board, supra, and cases there cited.

Prior to the 1959 amendments to the "L.M.R.A.", Section 8(b) (4) (A), as here pertinent, provided that it shall be an unfair labor practice for a labor organization or its agents to engage in, or to induce or encourage the *employees* of any employer to engage in:

(1) A strike, or

(2) A refusal to use, manufacture, process, transport, or otherwise handle or work on any goods, etc., WHERE THE OBJECT OF SUCH CONDUCT IS:

    (A) TO FORCE or require an employer or other person to cease doing business with any other person.

It seems, however, that any other means, not proscribed by Section 8(b) (4) could be employed by the union to enforce the agreement; Local 1976, United Broth. of Carpenters and Joiners of America, AFL Union v. National Labor Relations Board, supra; and, that there was nothing to prohibit the voluntary observance of such agreements.

In Carpenter's Union (Sand Door), supra, the question was whether a hot cargo provision in a collective bargaining agreement was a defense to a charge against a union of an unfair labor practice under 8(b) (4) (A) of the "L.M. R.A.", as amended, 29 U.S.C. § 158(b) (4) (A). It was held that the existence of the hot cargo provision was not a defense to such a charge.

Speaking for a majority of the Court, former Justice Frankfurter said that the employer's choice, of whether to comply with the hot cargo clause, must remain free of the pressures prohibited by Section 8(b) (4); and, that the inducements prohibited by Section 8(b) (4) "in the absence of a hot cargo provision are likewise prohibited when there is such a provision". Justice Frankfurter also said, however, that the employer's voluntary adherence to and execution of a hot cargo provision is not a violation of Section 8(b) (4) (A).

The Court, in Carpenter's Union, supra, repeatedly referred to the Congressional policy of preserving the employer's freedom of choice in deciding whether to engage in a secondary boycott; and, that this freedom of choice attends the employer regardless of whether there is a hot cargo contract. It was also said, however, that hot cargo clauses might still have some legal radiations affecting the parties, but did not say what those legal radiations were or might be.

In Application of Apex Lumber Corp., 15 Misc.2d 15, 179 N.Y.S.2d 503 (1958), aff'd., 7 A.D. 920, 183 N.Y.S.2d 697 (1959), it was held that a union was not entitled to seek an award in arbitration in the nature of a mandatory injunction, where an object was to compel an employer to recognize and enforce a hot cargo clause which was contained in the collective bargaining agreement between the union and the employer. The lower New York court said, 179 N.Y.S.2d p. 504:

"While petitioner can voluntarily cooperate in a secondary boycott, Local 1976, United Broth. of Carpenters and Joiners of America, etc. v. N. L. R. B., supra (357 U.S. 93, 78 S.Ct. 1011, 2 L.Ed.2d 1186) it is indicated that it cannot be compelled to do so even though it may be a party to a hot cargo clause."

In other words, the court said that the union could not compel, through arbitration, the specific performance of the conduct called for by the hot cargo clause. The court gave as its reason therefor the fact that to do so would violate "the declared federal policy on this matter".

The Appellate Division of the New York Supreme Court affirmed the decision of the lower court and said that the employer, as the secondary employer, would have the choice of abiding or refusing to abide by the provisions of the

hot cargo clause at the time it was called on to put into effect the secondary boycott requested by the union.

The decision of the New York court in the Apex case, supra, was severely criticized in a law review article, "Specific Performance of 'Hot Cargo' Provisions in Collective Bargaining Agreements by Arbitration and Under Section 301(a) of the Taft-Hartley Act". 6 U.C. L.A.L.R. 85 (1959). The learned author of that article took the position that the New York court's decision was incorrect, because a mandatory injunction to force the employer to comply with the terms of the "hot cargo" agreement would be directed to the employer and not to his employees; and therefore, such pressure would not be of the kind proscribed by Section 8(b) (4), supra, which was designed to prohibit union pressure on *employees* of the secondary employer. This is a convincing argument when applied to Section 8(b) (4) as it was prior to the 1959 amendments to the L.M.R.A. However, such an argument is without merit at this time, because the 1959 amendments changed Section 8(b) (4) so that union pressure of the kind proscribed is also prohibited when such pressure is directed to the employer.

The 1959 amendments considerably expanded the provisions of Section 8(b) (4), and adds, in part, the following prohibited union activities:

It is an unfair labor practice for a labor organization or its agents to:

(1) threaten,

(2) or coerce,

(3) or restrain

any person engaged in an industry affecting commerce, where the object of such conduct is:

forcing or requiring any person to cease doing business with any other person.

[Sec. 8(b) (4) (ii) (B), "L.M.R.A.", 1947, as amended, 1959, 29 U.S.C. § 158 (b) (4) (ii) (B), as amended.]

■ Thus, not only is the union prohibited from inducement of secondary *employees*, where the object of such conduct is to force or require the secondary employer to cease doing business with another person, it is prohibited from exerting the proscribed pressures directly upon the *employer*.

The 1959 amendments to the "L.M.R.A." also added subsection (e) to Section 8 of the "L.M.R.A." of 1947. (Sec. 158, Title 29 U.S.C.A.). Subsection (e) of Section 8, supra, provides, in substance, that it is an unfair labor practice for any labor organization and any employer to enter into a so-called "hot cargo" agreement. The first proviso to subsection 8(e), however, exempts, from the ban on hot cargo agreements, certain agreements (as in the case at bar) between labor organizations and employers in the construction industry.

The second proviso to subsection 8(e) exempts certain persons in the apparel and clothing industry from the ban on hot cargo agreements. In addition, the second proviso exempts certain persons in the apparel and clothing industry from the protection from union unfair labor practices afforded by Section 8(b) (4) (B). The third proviso to subsection 8(e) goes even further and provides that nothing in the subchapter of the Act, within which Section 8 is located, will prohibit the enforcement of any agreement within the apparel and clothing industry proviso.

■■ It is significant that Congress, in subsection 8(e), did not make the third proviso of that section apply to agreements within the construction industry proviso. It is also significant that the construction industry (as were certain persons in the garment industry) was not deprived, by subsection 8(e), of the protection from union unfair labor practices proscribed by subsection 8(b) (4) (B) of the "L.M.R.A.", as amended. That the aforementioned discrepancies between the construction industry proviso and the garment industry proviso to subsection 8(e), supra, were intended by Congress to be discrepancies, is borne out by the legislative history regarding the addition of subsection (e) to Section

8, of the "L.M.R.A." of 1947.[1] The net effect of Section 8(e), supra, on the law relating to construction industry hot cargo clauses, is that the case law regarding hot cargo agreements is left as it was prior to the 1959 amendments to the "L.M.R.A." of 1947, if the agreement is valid within the construction industry proviso to subsection 8(e) of the Act. That is, notwithstanding the Section 8 (e) validity of the agreement, unions are still prohibited from exerting the pressures specified in subsection 8(b) (4) where the object of such conduct is to either acquire or enforce a hot cargo agreement with an employer in the construction industry. Laborers Local 383, 137 N.L.R.B. 149, 52 L.R.R.M. 1444 (1962); Local 60 Plumbers, 138 N.L. R.B. 116, 51 L.R.R.M. 1182 (1962); Lebus for and on Behalf of N. L. R. B. v. International Union of Operating Engineers, Hoisting and Portable, Local Union 406, D.C., 188 F.Supp. 392 (1960); N. L. R. B. v. Bangor Building Trades Council, (C.A.1st, 1960), 278 F.2d 287; N. L. R. B. v. International Union of Operating Engineers Local Union No. 12, (C.A. 9th, 1961), 293 F.2d 319; Operating Engineers Local 825, 140 N.L.R.B. No. 48, 52 L.R.R.M. 1043 (1963).

The only "legal radiations" of hot cargo clauses that diligent research has revealed have been that: (1) the voluntary existence of a hot cargo clause is not an unfair labor practice by either the union or the employer; (2) voluntary observance of the hot cargo agreement by the employer is not a Section 8(b) (4) violation; and (3) the union may persuade or talk the employer into voluntary compliance with the hot cargo provision without committing an unfair labor practice. Nowhere is it indicated that the courts can force, at union insistence, the employer to observe the hot cargo agreement. Rather, the history of the hot cargo controversy indicates that the courts do not consider hot cargo agreements as legally binding agreements.

In the case at bar, a decision for the plaintiff, enforcing the hot cargo agreement, would force the defendant, against its will, into either of two courses of conduct: (1) to have the subcontractor agree to the plaintiff's demand, that is, to have the subcontractor agree to be bound by the collective bargaining agreement between the plaintiff and the defendant; or (2) cease doing business with the subcontractor. There can be no other result if this Court orders enforcement of the hot cargo agreement. Judicial enforcement of the hot cargo agreement would constitute a more subtle form of coercion than a threatened strike or picket, but it is coercion [2] and, if this Court sets a precedent in this case for more of the same conduct in the future, has overtones of being an infinitely more

---

1. See Aaron, "The Labor Management Reporting and Disclosure Act of 1959", 73 Harv.L.Rev. 1086, 1112–1121 (1960); Congressional Record, Vol. 105, part 14, Sept. 3, 1959, "Senator Kennedy (D. Mass.)", p. 17900; House Reports, Vol. 7, Report No. 1147, S. 1555, "Labor-Management Reporting and Disclosure Act of 1959", Conference Report, p. 39 (Also reported in Vol. 1, Legislative History of the Labor-Management Reporting and Disclosure Act of 1959, N.L.R.B., pp. 943–944). The aforementioned reports also contain language that could be interpreted as an expression of Congress' recognition of the defendant's major premise in the case at bar. That is, that it was understood by Congress that hot cargo agreements were not judicially enforceable prior to the 1959 amendments, and that hot cargo agreements within the construction industry proviso would continue to be unenforceable by judicial process. See Restatement of the Law of Contracts, Sec. 14, regarding unenforceable contracts.

2. *Coerce*—"(1) to restrain by force, especially by law or authority; to repress, curb; (2) to compel to any action; (3) to enforce, as to *coerce* obedience". Webster's New Collegiate Dictionary (1960).
   As to the coercive power of the law, see Kelsen, General Theory of Law and State (1945).
   Compare to the case at bar: Barrows v. Jackson, 346 U.S. 249, 73 S.Ct. 1031, 97 L.Ed. 1586 (1953).

successful form of coercion than either a strike or a picket.

Likewise, if this Court should award damages to the union for the failure of the employer to abide by the terms of the hot cargo agreement, the employer would still be under a form of "coercion" that would materially affect his free judgment as to the desirability of continuing to do business with its present subcontractor. For example, the defendant could choose to continue to do business with its present subcontractor, in violation of the agreement, and thereby subject itself to further liability in damages to the union; or, if the defendant chose not to accept the course last mentioned, it would have no choice other than to cease doing business with its present subcontractor and find another subcontractor which would agree to the demands of the union. Cf. Teamsters Local 728 (Brown Transport Corp.), 140 N.L.R.B. 137, 52 L.R.R.M. 1252 (1963); and Teamsters Local 282 (Precon Trucking Corp.), 139 N.L.R.B. 92, 51 L.R.R.M. 1441.

It is, therefore, the decision of this Court that the complaint of the plaintiff does not state a claim upon which relief can be granted, because the hot cargo provision involved herein is not enforceable in the manner in which the union, plaintiff, here seeks enforcement of that provision. Either specific enforcement of the provision by this Court or an award in damages for the breach of the provision at the insistence of the union, would result in "coercion" or "restraint" of the free will of the employer in deciding whether he chooses to continue to do business with his present subcontractor or to abide by the terms of the hot cargo provision. Such a result would be violative of Section 8(b) (4) (ii) (B) of the Act, supra, as this Court interprets the provisions of that section.

■ As to the counterclaim of the defendant, this Court is of the opinion that, under the circumstances here involved, the mere filing and maintaining of this lawsuit by the plaintiff is not an unfair labor practice under Section 8(b) (4) (ii) (B) of the Act, supra.

■ It is, therefore, ORDERED, ADJUDGED and DECREED that the motion of the plaintiff to dismiss the counterclaim of the defendant be, and the same is hereby granted; that the motion of the plaintiff for summary judgment be, and the same is hereby denied; that the complaint of the plaintiff be, and the same is hereby dismissed for failure to state a claim upon which relief can be granted, except as to claim II of the complaint, wherein the plaintiff seeks a declaration of its rights and the rights of employees represented by the plaintiff under the terms of the provision here involved. Such rights are hereby declared to be as follows: that the provision here involved may be voluntarily complied with, or executed, by the defendant, so long as any decision of the defendant to comply with the terms of said provision is not the result of union conduct of the kind prohibited by the provisions of Section 8(b) (4), L.M.R.A., 1947, as amended. 29 U.S.C. § 158(b) (4), as amended.