**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

**v.**

**MILK DRIVERS AND DAIRY EMPLOYEES LOCAL UNION NO. 584, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, Respondent.**

**No. 288, Docket 29130.**

United States Court of Appeals
Second Circuit.

Argued Jan. 12, 1965.

Decided Jan. 26, 1965.

Melvin J. Welles, Attorney, National Labor Relations Board (Arnold Ordman, General Counsel, Dominick L. Manoli, Associate General Counsel, Marcel Mallet-Prevost, Asst. General Counsel, and Linda R. Sher, Attorney, NLRB, on the brief), for petitioner.

Bruce H. Simon, New York City (Robert S. Savelson, New York City, of coun-

sel, and Cohen & Weiss, New York City, on the brief), for respondent.

Before SMITH, KAUFMAN and ANDERSON, Circuit Judges.

SMITH, Circuit Judge:

The National Labor Relations Board petitions for enforcement of its order 146 NLRB No. 62 based on findings that Milk Drivers Local 584 violated Section 8(b) (4) (i) and (ii) (B) of the National Labor Relations Act, 29 U.S.C. § 158(b) (4) (i) and (ii) (B),[1] by inducing employees of neutral employers to engage in work stoppages, and by threatening and coercing persons engaged in commerce, with an object of forcing a neutral employer, Balsam Farms, Inc., to cease doing business with Old Dutch Farms, Inc. We find that the Board's findings are supported by substantial evidence on the record as a whole, and that Local 584 is not excused from the secondary boycott provisions of the Act by its collective bargaining agreement. We grant enforcement of the Board's order.

The Trial Examiner found that the Union had violated § 8(b) (4) (i) (B) and § 8(b) (4) (ii) (B) of the NLRA by coercing neutral employers and employees of neutral employers with an object of forcing these employers to cease doing business with the primary employer, Old Dutch. The Board adopted the findings, conclusions and recommendations of the Examiner. Old Dutch is a distributor of milk, employing eight drivers on four routes, and is a member of a multi-employer bargaining unit which had then and still has a collective bargaining agreement with the Union. Milk was purchased independently by Old Dutch, which has no bottling facilities of its own, and was pasteurized and bottled by a larger distributor, Balsam Farms, also a member of the bargaining unit. Balsam performs similar services for other distributors in the area and in the case of Old Dutch provides it with office and parking space in and around the Balsam building. Rental and service charges are based solely on the quantity of Old Dutch milk bottled by Balsam.

Clause 66A of the Union contract provided that it would be a violation of the agreement for any signatory thereto to distribute milk to "depots" for the purpose of selling milk. That clause was incorporated in the agreement because the Union feared that other means of distributing the milk would cause a decrease in the route business and thereby jeopardize the jobs of the driver-salesmen represented by the Union. But in apparent disregard of this prohibition, many of the member milk dealers, including Old Dutch, opened up retail stores where milk was sold at retail prices along with many other grocery items. The Union opposed these stores vehemently and was successful in convincing several distributors to close them. However, Old Dutch refused, and the Union invoked the contract's arbitration clause.

1. "(b) It shall be an unfair labor practice for a labor organization or its agents—
   "(4) (i) to engage in, or to induce or encourage any individual employed by any person engaged in commerce or in an industry affecting commerce to engage in, a strike or a refusal in the course of his employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services; or (ii) to threaten, coerce, or restrain any person engaged in commerce or in any industry affecting commerce, where in either case an object thereof is—
   "(B) forcing or requiring any person to cease using, selling, handling, transporting, or otherwise dealing in the products of any other producer, processor, or manufacturer, or to cease doing business with any other person, or forcing or requiring any other employer to recognize or bargain with a labor organization as the representative of his employees unless such labor organization has been certified as the representative of such employees under the provisions of section 159 of this title: *Provided*, That nothing contained in this clause (B) shall be construed to make unlawful, where not otherwise unlawful, any primary strike or primary picketing."

Before the actual arbitration hearing was to have been held, the Union instructed Balsam employees, who had continued to handle Old Dutch milk, among others, to walk off their jobs. A short while later pickets appeared carrying signs which read, "Unfair, milk company stores violated contract, and destroy job security," and, "On strike. Unfair to Union members Local 584, IBT." The signs did not identify the employer being picketed. Drivers making deliveries to the Balsam plant refused to cross the lines.

The Union, Old Dutch, Balsam and others met that same day. In the course of the negotiations, the Union made it clear that its purpose was to close the Old Dutch store and that it would picket Balsam in an effort to achieve that aim. Balsam objected on the ground that it was outside the dispute; the Union compromised by agreeing to remove the pickets if Balsam would agree to stop processing Old Dutch milk, and Balsam acquiesced. For several days thence Balsam did not handle Old Dutch milk.

■ Old Dutch and the Union finally reached an agreement whereby Old Dutch would raise the price of the milk distributed by its retail store. Shortly thereafter, Old Dutch instituted the unfair labor practice charge against the Union giving rise to this action. The Regional Director of the Board at once proceeded under § 10(l) to seek an injunction, stating that he had reasonable cause to believe that the charge was true. In denying the request for the injunction, Judge Dooling, in a reasoned opinion, concluded that Balsam was not a "neutral" employer and that there was a "community of interest" between Balsam and Old Dutch. The Trial Examiner disagreed with Judge Dooling's conclusions. He ruled that clause 66A and the purpose behind its inclusion, as well as the potential threat to the drivers' job security posed by Balsam's continuing to process Old Dutch milk, and the functional integration of the Balsam and Old Dutch operations, were not grounds for the making of an exception to the Act and holding the conduct permissible when

the picketing fell so clearly within the secondary boycott provisions. The Board agreed, taking the position that once the activity comes within the secondary boycott prohibition, it is conduct violative of the Act that cannot be justified by such explanations as prior violation of the collective bargaining agreement, the maintenance of general union policies, or functional integration of the primary and secondary employers.

■■ In this the Board is correct. It is not necessary to find that the sole object of the strike was that of forcing the "neutral" employer to cease doing business with the "primary" employer. NLRB v. Denver Building and Construction Trades Council, 341 U.S. 675, 71 S. Ct. 943, 95 L.Ed. 1284 (1951). Thus, the fact that the Union was striking Balsam in an effort to sustain its overall policy of providing job security for its members does not validate its illegal objective of coercing Balsam to cease doing business with Old Dutch—the controversy was limited to Old Dutch's retail shop with respect to the Union's immediate objectives.

■■ Second, the integration of Balsam and Old Dutch operations on a merely functional plane is an improper basis for concluding that both have primary employer status under the secondary boycott provisions. That approach has been expressly rejected by the Court. NLRB v. Denver Building and Construction Trades Council, supra. As in Denver Building and Construction Trades Council, we have two *independent contractors* who are operating from the same situs— the relationship between the two concerns is one of merely "doing business." Since the object of every secondary boycott is really to cause a cessation of business between two independent companies, the Labor Act's prohibitions would be nullified if a union were allowed to claim that the very business relationship it seeks to end makes both parties "pripary" employers. It is only where there exists a community of interests between the two employers, where the two employers are allied by family ties, common

ownership, or joint control, that the two can rightfully be treated as one for the purpose of § 8(b) (4) (i) and (ii). See NLRB v. Local 810, Steel, Metals, Alloys and Hardware Fabricators and Warehousemen, etc., 299 F.2d 636 (2 Cir. 1962); Drivers and Chauffeurs Local Union No. 816, etc. v. NLRB, 292 F.2d 329 (2 Cir.), cert. den. 368 U.S. 953, 82 S.Ct. 396, 7 L.Ed.2d 386 (1961). And this is not a case where the work being performed by the secondary employer is work which, but for the Union's dispute could have been done by the primary employer's employees. See NLRB v. Business Machine and Office Appliance Mechanics Conference Board, etc., 228 F.2d 553 (2 Cir.), cert. den. 351 U.S. 962, 76 S.Ct. 1025, 100 L.Ed. 1483 (1955).

■ Furthermore, the fact that Old Dutch or Balsam may have been violating the terms of the collective bargaining agreement does not justify the Union's action. What is unlawful secondary picketing cannot thereby be converted into lawful primary picketing. The Supreme Court has held that union conduct which would unquestionably be a violation of § 8(b) (4) (A) by itself cannot be removed from the Act's proscription by a blanket clause in the collective agreement authorizing such conduct; in other words, the conduct is still unlawful even though not to permit it would result in a violation of the union contract. Local 1976, United Brotherhood of Carpenters and Joiners v. NLRB (Sand Door), 357 U.S. 93, 78 S.Ct. 1011, 2 L.Ed.2d 1186 (1958). There the secondary employer had agreed to a "hot cargo" clause in its contract but reneged in a specific situation when the union requested it not to handle the goods of a primary employer which the union had struck. The "hot cargo" clause was not a bar to the secondary employer's refusal to participate in the boycott because Congress intended to preserve the employer's right in each and every case to choose between joining and not joining the boycott. This right to choose which Congress has granted the secondary employer is not to be ignored simply because the former is a member of the same multi-employer bargaining unit as the primary employer and because it has violated the union agreement. Similarly, in NLRB v. Bangor Building Trades Council, 278 F.2d 287 (1 Cir. 1960), the First Circuit held that a contract cannot be enforced by the means specifically prohibited in § 8(b) (4) (A). Other circuits are in accord. See NLRB v. International Union of Operating Engineers, 293 F.2d 319 (9 Cir. 1961) (fact that secondary employer had breached its contract with the union did not justify the union's secondary boycott of it); Local No. 5, United Ass'n of Journeymen v. NLRB, 116 U.S.App.D.C. 100, 321 F.2d 366, cert. den. 375 U.S. 921, 84 S.Ct. 266, 11 L.Ed.2d 165 (1963). Although Balsam was party to the contract, so far as Old Dutch's store was concerned Balsam was a secondary employer. Judge Dooling seemed to intimate that there was common control, but evidence of such common control is lacking in the record.

■ The only remaining question is whether the Board's order is too broad. The Board adopted the Trial Examiner's recommended order which required the Union to cease inducing or encouraging employees of Balsam or any other employee to engage in strikes, etc., where an object thereof is to force Balsam or any other employer or person to cease doing business with Old Dutch or any other employer with which the Union has a dispute over the operation of a retail milk store in claimed violation of clause 66A. An order of such breadth was justified in view of the Union's avowed intention to close down the many retail milk shops operated by the bargaining unit's members. Under these circumstances, the Board could anticipate that the Union might engage in similar activity against other neutral employers and was entitled to prevent it. See NLRB v. Local 810, Steel, Metals, Alloys and Hardware Fabricators and Warehousemen, etc., supra.

The petition for enforcement of the Board's order is granted.