Murray T. Feiden, J.
This is an application by defendants for an order compelling arbitration of all disputes between the parties, as provided for in certain stockholder and voting-trust agreements and staying all proceedings in the above action until arbitration has been completed.
The action is between stockholders who own all the stock of related corporations, the Reo Products Manufacturing Corp., hereinafter referred to as “ Reo ”, and Crest Cutlery Corp., hereinafter referred to as “Crest”. These corporations are classic examples of “ close ” corporations. The plaintiffs and the defendants have equal ownership of all issued and outstanding stock of Reo and Crest. All stock of both corporations are now held by defendant Theodore Ribak under a voting trust agreement.
The gravamen of the complaint is that defendant Theodore Ribak has diverted and appropriated corporate assets for his own use and for the benefit of another corporation in which he alone is interested; that said defendant paid out moneys to his own corporation for fictitious services; that he used corporate funds to purchase securities for his own account; that he failed to give an accounting as voting trustee; and that he wrongfully removed books and records of the corporations and *9 refused to permit inspections thereof. Paragraph 41 of the complaint states that no relief is requested against the defendant Barnett L. Ribak and that he is merely a nominal party.
One of the main grounds of plaintiffs’ opposition to arbitration is the contention that the agreement to arbitrate contained in the stockholder agreements did not encompass the issues involving the alleged breach by the defendant voting trustee, Theodore Ribak, of his fiduciary duties. An analysis of the various agreements herein does not support this contention. At the outset it must be observed that the aforesaid voting trustee is a party to the preincorporation agreement and the stockholder agreements hereinafter referred to as well as to the voting trust agreements. The Reo stockholders’ agreement dated April 10, 1958, as amended, and the Crest stockholders’ agreement dated September 26, 1961, as amended, provide as follows: “In the event that any dispute shall arise between the parties hereto, then such dispute shall be referred to arbitration as provided for herein.” (Pars. Twelfth, Eleventh, respectively.) and “ This agreement shall be binding upon the heirs, executors, administrators, successors and assigns of the parties hereto and shall not be modified, amended or can-celled except by agreement, in writing, executed by the corporation and the then holders of all of the outstanding stock of the corporation.” (Pars. Thirteenth, Twelfth, respectively.)
In addition to the above clauses the basic stockholder agreements provide that the parties and corporations will indorse on all certificates of stock and the voting trust certificates issued in exchange for the stock, a provision that such stock and certificates are “ subject to all of the terms and conditions of ” the afore-mentioned stockholders’ agreements (pars. Eighth and Ninth).
In the amendment to the Reo stockholders’ agreement dated April 23, 1960 (par. Sixth C) and the Crest stockholders’ agreement dated September 26, 1961 (par. Sixth C) there appears the following: ‘1 The voting trustees named in the voting trust agreement * * * shall not in any way modify or vary any of the provisions set forth in this agreement or in any other agreement executed simultaneously herewith between the parties hereto or any of them.”
Simultaneously with the execution of the Reo agreement dated April 10, 1958 and the Crest stockholders’ agreement dated September 26, 1961, all the parties entered into voting trust agreements pursuant to provisions of paragraph Second of said stockholders ’ agreements, which reads as follows: 1 ‘ The parties hereto do hereby agree to enter into a voting trust *10 agreement and assign their stock to the voting trustees named ■therein, such agreement to be executed simultaneously herewith ’ ’ and the first paragraph of each voting trust agreement provides: “That each of the parties hereto shall, and simultaneously with the execution of this agreement, do hereby transfer, assign, deliver and set over, his stock to the voting trustee hereinafter named for the purpose set forth herein, and which said trustees shall cause the stock represented thereby to be transferred to them as voting trustees on the books of the corporation.”
Significantly, the preincorporation agreement of April 8, 1958 makes provision for the execution of the aforesaid arbitration, stockholder and voting trust agreements upon organization of the corporation so that the interrelation of the above agreements is manifest from the beginning. In the face of the above provisions of the various agreements the court must come to the conclusion that the expressed purpose and intent of the parties was to have all agreements, including the voting trust agreements, subject to and bound by the arbitration clauses in the stockholders’ agreements. The basic stockholder agreements and the voting trust agreements, simultaneously executed, are inextricably interwoven with one another. The clauses making the trust certificates subject to the terms and conditions of the stockholder agreements, the assignment of the stock to the voting trustee in both the stockholder agreements and the voting trust agreements; the provision that the voting trustee shall not in any way modify the provisions of the stockholders’ agreements must all be considered as part of the entire transaction. Any other interpretation would do violence to the express terms of the agreements as well as to the intent of the parties. In Matter of Stone (Freezer) (280 App. Div. 103, 105, affd. 304 N. Y. 649), it was held that an arbitration clause in a basic agreement is applicable to a separate but related agreement simultaneously executed therewith, even though there was no arbitration clause in the latter agreement. This case is also cited for such proposition in the footnote to Matter of Associated Metals & Min. Corp. (Kemikalija) (10 N Y 2d 298, 302).
Another important consideration is the fact that the alleged acts of waste of corporate assets by the voting trustee are not only a breach of his fiduciary duties created by the voting trust agreements but also are a violation of his duties as an officer and director of the corporations under the basic stockholder agreements, irrespective of the voting trust agreements. The defendants have erroneously assumed that the essence of *11 the relief sought by plaintiffs is confined to Theodore Ribak’s breach of his fiduciary duties under the voting trust agreements. Paragraph 29 of the complaint shows that the issues also involve violation of his duties as an officer and director of the corporations, the prohibition of which is implied in every such agreement between contracting parties.
We now come to a consideration of the plaintiffs’ contention that a substantial part of the plaintiffs ’ complaint encompasses a derivative stockholder’s action for corporate waste and diversion of assets and that it is against public policy to compel arbitration as to such issues. Most of the decisions on this question are not decisive because they were decided on procedural grounds with only dicta supporting plaintiffs’ contention. Thus, in Lumsden v. Lumsden Bros. & Taylor (242 App. Div. 852) and Pfeiffer v. Berke (4 Misc 2d 918), involving derivative stockholder’s actions for corporate waste of assets of close corporations, defendants sought arbitration by improperly asserting the arbitration provision in the form of an affirmative defense in the answer instead of proceeding properly by way of motion for an order of arbitration and for a stay of the action. Although the arbitration provisions were denied effect only on procedural grounds, there is dicta in these eases to the effect that an agreement to arbitrate issues encompassed within a shareholder’s derivative action is unenforcible as against public policy. No attempt was made in these eases to distinguish between close and public corporations. Moreover, the decision in the Lumsden case is ambivalent in that the court goes on to say “ that remedy (referring to arbitration) is still open to him unless he has waived it or is guilty of laches * * * but he cannot plead such arbitration agreement in bar of this action.”
The decision in Ehrlich v. Drake Constr. Corp. (92 N. Y. S. 2d 711), which quotes with approval the dictum in the Lumsden case, is itself dictum because there the agreement between the individual parties provided for arbitration of specified questions and disputes and the court found that the issues as to which arbitration was sought were not within the scope of the particular arbitration clause involved.
In Matter of Diamond (80 N. Y. S. 2d 465, affd. without opinion in 274 App. Div. 762) the court refused to stay a stockholder’s derivative action involving a close corporation on the ground that the issues involved did not come within the scope of the stockholders’ agreement. Here again there is only dictum that “ even if such issues were arbitrable under the agreement, they would be unenforcible as against public *12 policy ’ \ It is to be noted that in the Diamond case the court was not presented with the type of situation that we have here where the voting trust agreement, creating the fiduciary relationship which is claimed to have been violated, is expressly connected with and part of the fabric of the agreements between the parties.
This court is constrained to follow the ruling in the Second Department in the Matter of Carl (Weissman) (263 App. Div. 887). An examination of the record on appeal discloses that the action between the parties was for willful waste and dissipation of the assets of a close corporation. There too, as in the instant ease, the plaintiff did not bring the action on behalf of the corporation for the stated reason that the only stockholders were Weissman and Carl, so that it would be futile to make demand upon the former to bring an action against himself. Although the action was not in the form of a stockholder’s derivative action, it was nevertheless properly characterized as such in the opinion. The court held: ‘ ‘ The parties own a corporation whose voting stock and management are divided between them equally. In a written agreement for the organization of the corporation, they provided that all questions, disputes and controversies between them concerning the policies of the management of its affairs should be settled by mutual agreement, and that any disagreement not provided for otherwise should be determined by arbitration. The arbitration clause was thus broad in its terms. The respondent has commenced a stockholder’s derivative action in the right of the corporation, and in the complaint alleges that petitioner has deliberately wrecked the corporation and has wasted and disposed of its property without consideration. In our opinion, in view of the broad and unambiguous terms of the provision for arbitration, it was error on the part of the learned Special Term to deny petitioner’s application for the appointment of an arbitrator whose appointment upon the undisputed facts, is contemplated by the provision for arbitration. ’ ’
It is noteworthy that in none of the cases cited by plaintiffs has there been an attempt to analyze the reasons for their conclusions nor have they drawn the all-important distinction between a close corporation and a public corporation as it relates to the issues herein. Let us first examine the statement in Matter of Diamond (supra) that an action for corporate waste belongs to the corporation and hence an arbitration clause in a stockholders’ agreement cannot bind the corporation. This theory may be persuasive when applied to a public corporation but it disappears when one looks carefully at the hybrid *13 nature of a close corporation. A realistic analysis of a close corporation is contained in Clark v. Dodge (269 N. Y. 410, 416): “ Such corporations were little more (though not quite the same as) than chartered partnerships. ’ * * * As the parties to the action are the complete owners of the corporation, there is no reason why the exercise of the power and discretion of the directors cannot he controlled by valid agreement between themselves, provided that the interests of creditors are not affected.’ ” The opinion emphasizes that stockholders, by consent, may do what they choose with the corporate matters and assets, provided the interests of creditors are not affected, because they are the complete owners of the corporation. (See, also, detailed discussion in 63 Col. L. Rev., pp. 267, 268, 285, 286 as to practical distinctions between close and public corporations.) All of this is another way of saying that in a close corporation, the fictional separation of the corporate entity from that of its stockholders can be pierced when practicality so demands.
From a logical and practical viewpoint, the conclusion is irresistible that in a close corporation a dispute concerning acts of waste is a matter involving stockholders inter se. To say that the corporate entity is the real party is to disregard reality. In line with this reasoning, we have the observation in Ehrlich v. Drake Constr. Corp. (92 N. Y. S. 2d 711, 712, 713, supra) that the fact that the corporation is not a party to the contract in which the arbitration clause is to be found is no obstacle to arbitration between the stockholders in a close corporation. (See, also, Greene Steel & Wire Co. v. Hartmann & Co., 235 N. Y. S. 2d 238, 242.) The rationale contained in some of the dicta that the issue of corporate waste, implicit in stockholder’s derivative suit, cannot be the subject of arbitration because of public policy, loses its vitality and its raison d’etre when applied to a close corporation. Furthermore, many, if not most disputes, can be framed in the form of a derivative action and a general rule that a stockholder’s derivative suit forecloses arbitration would be too rigid since it may permit the parties to evade the agreement at will (Col. L. Rev., supra, p. 283; Crandall v. Master-Eagle Photo Corp., 27 Misc 2d 475).
On broad principles of practicality, the courts should encourage arbitration to dispose of the problems created by disputes within close corporations. Arbitration avoids the delay inherent in litigation and weeds out from our courts the very type of time-consuming dispute that we have in the instant case. *14 (Matter of Mole [Queen Ins. Co.], 14 A D 2d 1, 3; Matter of New York Cent. R. R. Co. [Erie R. R. Co.], 30 Misc 2d 362, 367.)
The argument of the plaintiffs that arbitration should not be compelled because certain of the relief sought can only be granted by a court in proceedings under certain sections of the Business Corporation Law is clearly without merit. Under 7501 of the Civil Practice Law and Rules any controversy, whether justiciable or not, can be arbitrated. Likewise, the argument of plaintiffs that they would not have an adequate remedy in arbitration because they require extensive pretrial disclosure is answered by subdivision (c) of 3102 of the Civil Practice Law and Rules, which provides for disclosure in aid of arbitration.
With the exception of the issue of corporate waste the other issues raised in the plaintiffs’ complaint are clearly within the orbit of the stockholders ’ agreements and no serious objection is raised as to arbitration of such issues. The court therefore finds that all the issues between the parties arising out of the agreements and voting trust agreements, with the exception of the issue of validity of elections (which has been withdrawn by defendants), are arbitrable. The parties are directed to proceed with arbitration in accordance with the arbitration clause between them and the action between the parties is stayed until arbitration proceedings are finally determined.
Settle order on notice. The order should separately state the different types of issues involved.