### UNITED STATES STEEL CORPORATION

v.

### SEAFARERS' INTERNATIONAL UNION OF NORTH AMERICA, ATLANTIC, GULF, LAKES AND INLAND WATERS DISTRICTS.

Civ. A. No. 35965.

United States District Court
E. D. Pennsylvania.
Jan. 15, 1965.

Duane, Morris & Heckscher, by Roland Morris, Philadelphia, Pa., for plaintiff.

Bernard J. Goodheart, Philadelphia, Pa., Sol C. Berenholtz, Charles B. Heyman, Baltimore, Md., for defendant.

JOSEPH S. LORD, III, District Judge.

■ Plaintiff has brought this suit for damages against the Union under §§ 301(a) and 303 of the Labor Management Relations Act, 29 U.S.C. §§ 185 and 187. The first count—the § 301(a) count—alleges that the Union, in violation of the no-strike provision of the contract between the Company and the Union, engaged in a strike and work stoppage by refusing to crew plaintiff's ship, the S.S. Columbia.[1]

Count two—the § 303 count—complains that the defendant induced and encouraged certain employes to engage in a strike and other activities with a view toward forcing or requiring the Company to assign the work of loading the S.S. Columbia to members of the International Longshoremen's Association rather than to the Company's present employes who are members of the United Steelworkers of America, Local 4889,

---

1. Section 5 of the contract between the Company and the Union dated January 30, 1964, provides:

"There shall be no strikes, lockouts or stoppages of work during the life of this Agreement.

"The Unions and the employees covered by this Agreement will not picket, boycott or otherwise interfere in the operation, navigation, loading and discharging of any foreign flag vessels owned, operated or under charter to United States Steel Corporation or any subsidiary thereof at any ports in its intercoastal operation covered by this Agreement."

although the National Labor Relations Board had certified the United Steelworkers of America as the representative for employes performing the work of loading the S.S. Columbia.

The Union's answer denies it has engaged in a strike or work stoppage in breach of the contract and denies having otherwise engaged in the activities attributed to it in the complaint.

The defendant has filed a motion for a stay of proceedings pending submission to arbitration of violations or disputes arising under the agreement.[2]

Three alternatives present themselves. I may:

(1) Deny defendant's motion.

(2) Grant defendant's motion and stay the entire proceeding.

(3) Stay the § 301(a) action and permit the § 303 action to proceed.

I have concluded that the § 301(a) action should be stayed and that the § 303 action should be permitted to proceed.

■■ In reaching the conclusion that the § 303 action should go forward, it has been necessary to balance certain considerations. I am conscious of the policy against piecemeal litigation. Cf. Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148; Lesnik v. Public Industrials Corporation, 144 F.2d 968 (C. A. 2, 1944). However, equally strong is the policy of speedy and just determination of controversies. F.R.Civ. P. 1. Were we to stay all proceedings in

the § 303 action, discovery would be halted. The recollection of witnesses would fade and facts would become stale. If trial of the § 303 action eventually became necessary upon the conclusion of arbitration of the § 301(a) action, the trial would perforce be delayed pending the completion of discovery. Both of these policies can be harmonized if the § 303 case proceeds up to the point of actual trial, and if aribration is then not yet completed, either party may ask for a continuance. In this way, the matter will be determined as speedily and justly as possible, and yet piecemeal *determination* of the controversy will be avoided.

It is clear that the § 301(a) action (Count 1) comes within the purview of the contract provision for grievance and arbitration procedure for "any violations or disputes which may arise under this Agreement." [3]

■ The policy of enforcing agreements to arbitrate has been often enunciated by the Supreme Court. In Drake Bakeries, Inc. v. LOCAL 50 (1962), 370 U.S. 254 at pages 263–264, 82 S.Ct. 1346 at page 1352, 8 L.Ed.2d 474 the Court said:

> " * * * In passing § 301, Congress was interested in the enforcement of collective bargaining contracts since it would 'promote a higher degree of responsibility upon the parties to such agreements, and will thereby promote industrial peace' (S.Rep.No. 105, 80th Cong., 1st Sess. 17). It was particularly

2. Section 14 of the contract states:

"There shall be established a Port Committee at New York for the purpose of investigating and settling any violations or disputes which may arise under this Agreement. Such Port Committee shall consist of one representative of the employer and one representative appointed by the Unions.

"Any alleged violations or disputes arising under this Agreement shall be reported to the Port Committee who shall immediately investigate and promptly settle such alleged violation or dispute within five (5) days."

"In the event the Port Committee is unable to resolve any dispute, the matter

in dispute shall be referred to an arbitrator to be selected by agreement of Intercoastal and the Union. The arbitrator shall have jurisdiction and authority only to interpret, apply or determine compliance with the provisions of this Agreement insofar as shall be necessary to the determination of disputes referred to him. The arbitrator shall not have jurisdiction or authority to add to, detract from, or alter in any way the provisions of this Agreement."

3. It is not clear whether all of the allegations in Count 2 relate to conduct that would be subject to arbitration.

**532**

interested in placing 'sanctions behind agreements to arbitrate grievance disputes' * * *. The preferred method for settling disputes was declared by Congress to be '[f]inal adjustment by a method agreed upon by the parties' (§ 203 (d) of the Act, 29 U.S.C. § 173(d), 29 U.S.C.A. § 173(d)). 'That policy can be effectuated only if the means chosen by the parties for settlement of their differences under a collective bargaining agreement is given full play' * * *. Under our federal labor policy, therefore, we have every reason to preserve the stabilizing influence of the collective bargaining contract in a situation such as this. We could enforce only the no-strike clause by refusing a stay in the suit for damages in the District Court. We can enforce both the no-strike clause and the agreement to arbitrate by granting a stay until the claim for damages is arbitrated. This we prefer to do. * * "

See also, e. g., John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 549–550, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964).

Plaintiff argues that the present suit is distinguishable from the cases in which courts have stayed proceedings pending arbitration. Plaintiff relies heavily upon Twin Excavating Co. v. Local Union No. 731, Excavating, etc., 337 F.2d 437 (C.A. 7, 1964) in support of its argument that we should refuse to stay proceedings.

In Twin Excavating, the company brought an action for damages under § 303 of the Labor Management Relations Act, 29 U.S.C. § 187. There, the plaintiff did not allege a breach of the collective bargaining agreement. Whatever other effect the agreement to arbitrate may have had, the agreement did not even suggest that the question of violation (or not) of § 303 was arbitrable. It is clear that parties cannot be compelled to go to arbitration on issues which they have not agreed to submit to arbitration. See, e. g., John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 547, 84 S.Ct. 909 (1964); United Steelworkers of America v. Warrior & Gulf Nav. Co., 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960).

Further, the Twin Excavating court expressed serious doubt that the contract contained a valid arbitration provision. The court also intimated that even had that suit been brought under § 301, the Union's motion for a stay might be denied because of the Union's delay in requesting arbitration.

The most notable difference between this case and Twin Excavating is that in the latter there was no § 301(a) action, whereas here there is, and the § 303 action upon which the Twin Excavating suit was predicated was not embraced in the arbitration agreement. For this reason, together with the other differences referred to, we hold that Twin Excavating does not control this situation.

The plaintiff points to the evils of secondary boycotts and jurisdictional disputes, citing the reference in Twin Excavating to the legislative history of § 303,[4] and argues that a § 301 action should not be affected by an arbitration clause where the breach of contract involves an unfair labor practice. It would have me refuse to enforce the agreement to arbitrate by declining to stay even the § 301 action. This I refuse to do in the face of the strong policy in favor of submitting disputes to arbitration after the parties have bargained for that arbitration. The threat of damages still looms over secondary boycotts and jurisdictional strikes when the violator is sub-

4. "The intent of Congress in enacting § 303 is well shown by a statement of Senator Taft who was the author of the bill. The Senator said: ' * * * I think the threat of a suit for damages is a tremendous deterrent to the institution of secondary boycotts and jurisdic-tional strikes. * * *' (93 Cong.Rec. 5060; II Leg.Hist. of Labor Management Relations Act of 1947, page 1371.)" Twin Excavating Co. v. Local Union No. 731, Excavating, etc., 337 F.2d 437, 438 (C.A.7, 1964).

ject to an arbitrator's and a court's award for damages.

Plaintiff refers to cases relating to pendant and ancillary jurisdiction and argues from these that I should decline to stay the § 301 action because the § 303 action cannot be arbitrated and therefore ought to proceed. Parenthetically, it should be noted that I have decided to permit the § 303 action to proceed only because in so doing there will be no interference with or effect on the arbitration process.

The Freeman v. Howe, 24 How. 450, 16 L.Ed. 749 (1860), and Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586 (1933), line of pendant and ancillary jurisdiction cases deal with the question of the *jurisdiction* of the federal courts. The present case does not present such a question. This court has assumed jurisdiction and the real question is whether to give effect to the agreement to arbitrate and, if so, how.

Behind Hurn v. Oursler is the policy against piecemeal litigation. The decision to permit the § 303 action to proceed to trial (unless it develops that the arbitration proceedings will not have culminated before such trial) seems to best harmonize the policy against piecemeal litigation with the policy in favor of enforcing compliance with arbitration agreements. Permitting either party to ask for a stay of the trial, if it appears that the § 303 action will come to trial before arbitration is concluded, enables the court to consider a final arbitration award in rendering judgment in the § 303 action.

## ORDER

And now, January 15, 1965, it is ordered as follows:

1. The defendant's motion to stay proceedings on Count I of the complaint pending arbitration is granted.

2. The defendant's motion to stay proceedings on Count II of the complaint is denied, provided that should Count II of the complaint be reached for trial before the conclusion of arbitration proceedings, the trial of the action under Count II of the complaint shall be continued until the conclusion of such arbitration.