**TRAILWAYS OF NEW ENGLAND, INC.,**
**Appellant,**

v.

**AMALGAMATED ASSOCIATION OF STREET, ELECTRIC RAILWAY AND MOTOR COACH EMPLOYEES OF AMERICA, AFL–CIO, DIVISION 1318,**
**Appellee.**

**No. 6342.**

United States Court of Appeals
First Circuit.
April 13, 1965.

Betty J. Southard, Washington, D. C., with whom Edward I. Masterman, Paul J. Redmond, Boston, Mass., Richard R. Paradise, Washington, D. C., Masterman & Redmond, Boston, Mass., and Roberts & McInnis, Washington, D. C., were on the brief, for appellant.

* Senior Judge of the First Circuit, sitting by designation.

Earle W. Putnam, Washington, D. C., with whom Bernard Cushman, Washington, D. C., Arthur J. Flamm, and Segal & Flamm, Boston, Mass., were on the brief, for appellee.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.

HARTIGAN, Senior Circuit Judge (by designation).

This is an appeal from a summary judgment of the United States District Court for the District of Massachusetts entered May 13, 1964, ordering the appellant company to arbitrate certain grievances relating to the suspension of one of its drivers and to the discharge of other employees.

The company is engaged in the interstate transportation of passengers by motor bus between various points in Maine, New Hampshire, Massachusetts, Connecticut and New York. A collective bargaining agreement existed between it and the union effective from April 23, 1961 to February 4, 1964. By Article XXI it provided for the settling of grievances as follows:

"Section 7. All grievances arising hereunder, including discharge, disciplinary action over the interpretation and application of the Agreement shall be disposed of in the following manner: * * *."

Sub-sections a, b, c, and d set forth the procedure for handling grievances and for arbitration in the event of failure of the grievance procedures. Section 8 provided procedures for company grievances. The contract did not contain a no-strike clause.

In the period between August and December of 1963 differences arose between the company and the union over whether the bus operators—members of the union—were required to carry standing passengers. Finally, on December 29, 1963, one of the operators, Paine, refused to obey a company order to carry standees. The company thereupon removed him from service and on December 31, 1963, suspended him for thirty days for insubordination. The union filed a grievance protesting the suspension on January 7, 1964, but it was denied by the company on its merits. In protest against Paine's suspension, all the other union drivers refused to pull their runs. After warnings that it considered the strike illegal and that all participating employees were subject to discharge, and after demands that the union follow the grievance procedure of the contract, the company discharged approximately 190 operators and terminal employees for participating in the strike. Most of the discharges were confirmed by letter on January 6, 1964, although some of the employees were discharged on January 8. On January 14 the company notified the union that it was rescinding the contract as of December 31, 1963 because of the strike. It also refused to process grievances filed on January 14 in behalf of the discharged employees. The union then brought this action pursuant to section 301 of the Labor-Management Relations Act of 1947, 29 U.S.C. § 185, to compel arbitration.

During these same months the company and the union were preparing to open negotiations over a new collective bargaining agreement. On November 21, 1963, the union gave the company notice of its desire to make certain changes in working conditions and pay practices in the contract which was to expire February 4, 1964, and of its desire to resolve all grievances. The company responded on November 27 by giving the union notice of its desire to cancel the agreement in its entirety and of its hope to prepare a new proposed agreement. It also suggested that any outstanding grievances be settled in accordance with Article XV, Section 2, of the collective bargaining agreement, which provided that "all unsettled claims will be paid, denied or dropped before expiration date of present contract."

On December 10 the union sent a letter to the company's vice-president Powell, alluding to the difference of opinion over the carrying of standees. This letter was

put aside to be discussed at a January meeting set to resolve all grievances and to allow the union to present its changes in the contract. It seems to be agreed by the parties that these circumstances brought into play the provisions of section 8(d) of the National Labor Relations Act, 29 U.S.C. § 158(d).[1] The union was thus obligated to continue the terms and conditions of the existing contract in full force and effect, without resorting to strike or lockout during a sixty-day period commencing November 21, 1963. The discharges sought by the union to be arbitrated arose from a strike engaged in during that period.

■ The company's first major contention is that it was justified in rescinding the collective bargaining agreement and is no longer under any duty to arbitrate because the strike over Paine's suspension was a material breach of the agreement, in that the strike violated the provision for arbitration, which, it contends, was an implied no-strike clause. This contention must fail in the light of Local Union No. 721 United Packing-

house etc., Workers v. Needham, 376 U.S. 247, 84 S.Ct. 773, 11 L.Ed. 680 (1964). In that case the Supreme Court compelled arbitration where the union struck in violation of an express no-strike clause. There, too, the company announced that it considered the collective bargaining agreement "repudiated and terminated" and that it would not have further dealings with the union. The company here has produced evidence to show that the parties considered the arbitration provision to be an implied no-strike clause and that it truly was the "quid pro quo" of the arbitration agreement. We do not see how that can alter the result in view of the Supreme Court's clear rejection of the same argument in Needham, 376 U.S. at 251, 84 S.Ct. 773. Here, as in Needham, no exception was made in the arbitration provision for the arbitrability of discharges arising out of strikes. In addition to that the contract here lacked the no-strike clause contained in the Needham agreement. See also Drake Bakeries v. Local 50, Am. Bakery Work-

1. "(d) For the purposes of this section, to bargain collectively is the performance of the mutual obligation of the employer and the representative of the employees to meet at reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment, or the negotiation of an agreement, or any question arising thereunder, and the execution of a written contract incorporating any agreement reached if requested by either party, but such obligation does not compel either party to agree to a proposal or require the making of a concession: *Provided,* That where there is in effect a collective-bargaining contract covering employees in an industry affecting commerce, the duty to bargain collectively *shall also mean that no party to such* contract shall terminate or modify such contract, unless the party desiring such termination or modification—
"(1) *serves a written notice upon the* other party to the contract of the proposed termination or modification sixty days prior to the expiration date thereof, or in the event such contract contains no expiration date, sixty days prior to the time it is proposed to make such termination or modification;

"(2) offers to meet and confer with the other party for the purpose of negotiating a new contract or a contract containing the proposed modifications;
"(3) notifies the Federal Mediation and Conciliation Service within thirty days after such notice of the existence of a dispute, and simultaneously therewith notifies any State or Territorial agency established to mediate and conciliate disputes within the State or Territory where the dispute occurred, provided no agreement has been reached by that time; and
"(4) continues in full force and effect, without resorting to strike or lock-out, all the terms and conditions of the existing contract for a period of sixty days after such notice is given or until the expiration date of such contract, whichever occurs later:
" * * * Any employee who engages in a strike within the sixty-day period specified in this subsection shall lose his status as an employee of the employer engaged in the particular labor dispute, for the purposes of sections 158–160 of this title, but such loss of status for such employee shall terminate if and when he is reemployed by such employer."

ers, 370 U.S. 254, 82 S.Ct. 1346, 8 L.Ed. 2d 474 (1962).

The company further contends that the strike in protest of Paine's suspension was a violation of section 8(d) of the National Labor Relations Act, 29 U.S.C. § 158(d), that the strikers thereby lost their status as employees, and that there is, therefore, no duty to arbitrate their discharge. In support of this contention the company attempts to tie in the differences over the carrying of standees with the proposed negotiations for a new agreement. It then argues that the strike protesting Paine's suspension was a strike to terminate or modify the existing contract, violative of section 8(d). See Mastro Plastics Corp. v. National Labor Relations Board, 350 U.S. 270, 76 S.Ct. 349, 100 L.Ed. 309 (1956). It is by no means clear from the affidavits presented by the parties that the question of standees was so related to negotiations for a new contract. In view of our resolution of the issue, however, that matter is of no importance.

■■ The question whether a given set of facts constitutes an unfair labor practice under section 8 is in the first instance for the National Labor Relations Board to decide. San Diego Unions v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959). We, therefore, decline to decide whether the strike here was an unfair labor practice, in violation of section 8(d). We do admit, however, that it arguably was in violation of 8(d). On the other hand, we recognize that not every strike during the 8(d) sixty-day period is prohibited by that section. Mastro Plastics v. National Labor Relations Board, supra (unfair labor practice strike held permissible). See also Local Union No. 9735, Etc. v. National Labor Rel. Bd., 103 U.S.App.D.C. 294, 258 F.2d 146 (1958). The question, therefore, poses itself: Does a strike arguably in violation of section 8(d) of the National Labor Relations Act relieve the employer of his duty to arbitrate discharges resulting from the strike?

■ This is a question which goes, in the first instance, to arbitrability, since we have some doubt—though we need not decide—whether discharges occasioned by a violation of section 8(d) and, therefore, cloaked in the protection afforded by that section must be arbitrated. The question thus may be answered by the court. See John Wiley & Sons v. Livingston, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964). Cf. United Steelworkers v. American Mfg. Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960). It has not been raised before. The Supreme Court, however, has made clear its preference for compelling parties to go to arbitration when they have agreed to do so. See, e. g., United Steelworkers v. Warrior & Gulf Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). We do not believe it would be in keeping with the preferred position attached by the Court to labor arbitration were we to allow an employer to escape its duty to arbitrate whenever it can work out a theory that a particular strike may have been an unfair labor practice. We therefore, hold that an employer must arbitrate grievances arising from the discharge of strikers even where the strike may have been an unfair labor practice in violation of section 8(d). We decline to decide whether the same result would obtain where a strike was admittedly or clearly a violation of 8(d).

■ The company's contention that the union failed to file the grievances relating to discharge of the employees within the requisite time limits, is without merit. It can raise that defense before the arbitrator but not before this court. John Wiley & Sons v. Livingston, supra.

Nor are we impressed with the company's argument that the district court could not correctly have based its decision, inter alia, on an affidavit not given on personal knowledge. To the extent that the affidavit went beyond business records presented with it, it is not relied on by us in affirming the trial court. We do not understand the company as arguing that the business records themselves were inadmissible.

It follows that the sole question for the trial court to decide was whether the par-

ties agreed to arbitrate discharges and disciplinary action. By the express words of their agreement they did, and the district court, therefore, was correct in ordering the company to arbitrate.

Judgment will be entered affirming the judgment of the district court.

ALDRICH, Chief Judge, (concurring).

I quite agree with the court's opinion, but with the understanding, of which I wish to make note, that we are not presently deciding whether, if the strike was an unfair labor practice, it would be contrary to the provisions of the Act to foreclose by contract an employer's right to take the action contemplated by section 8(d) (4). Cf. Penello v. International Union, U.M.W., D.C.D.C., 1950, 88 F. Supp. 935, 941; see Local 453, International Union of Elec. Workers v. Otis Elevator Co., 2 Cir., 1963, 314 F.2d 25, cert. den. 373 U.S. 949, 83 S.Ct. 1680, 10 L.Ed.2d 705. I note, also, that a determination by the arbitrator, as a prelude to granting relief under the contract, that the strike was not an unlawful labor practice would not be final. See Carey v. Westinghouse Corp., 1964, 375 U.S. 261, 272, 84 S.Ct. 401, 11 L.Ed.2d 320.