**OLD DUTCH FARMS, INC., Plaintiff,**

v.

**MILK DRIVERS AND DAIRY EMPLOYEES LOCAL UNION NO. 584, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, Defendant.**

No. 65 C 276.

United States District Court
E. D. New York.

July 9, 1965.

See, also, D.C., 222 F.Supp. 125.

Herbert L. Maltinsky, Brooklyn, N. Y. (Marcus, Maltinsky & Marcus, Brooklyn, N. Y., of counsel), for plaintiff, opposed to motion.

Bruce H. Simon, New York City (Cohen & Weiss and Robert S. Savelson, New York City, of counsel), for defendant, in support of the motion.

DOOLING, District Judge.

Plaintiff has sued defendant in two counts, under Section 303 of the Labor

Management Relations Act (29 U.S.C.A. § 187), for damages caused by defendant's conduct, which has been held by the National Labor Relations Board (146 NLRB No. 62, 1964) and the Court of Appeals (1965, 341 F.2d 29) to have been a secondary boycott violative of Section 8(b) (4) (i) and (ii) (B) of the National Labor Relations Act (29 U.S. C.A. § 158(b) (4) (i) and (ii) (B)); the first count alleges the 1963 strike and picketing by which defendant sought to prevent Balsam Farm, Inc. from continuing to process milk for plaintiff so long as plaintiff continued to sell the milk at its low-cost "depot" store; the second count realleges the facts and alleges that the National Labor Relations Board determined that the strike and picketing were an unfair labor practice and that the Court of Appeals has granted enforcement of the NLRB order.

Defendant moves to stay the action pending arbitration; it relies on a clause in the contract between the parties which provides [Sec. 16(a)] for the arbitration of

> "Any and all disputes and controversies arising under or in connection with the terms and provisions of this agreement, or in connection with or relating to the application or interpretation of any of the terms or provisions hereof, or in respect to anything not herein expressly provided but germane to the subject matter of this agreement. * * *"

As the dispute that is the gist of the action is within the inclusive description of the arbitrable disputes, the action must be stayed pending arbitration; that the action rests on the statute and its violation, is squarely placed on LMRA § 303, and neither invokes nor needs to invoke the contract does not preclude arbitration.

The dispute started with the Union's claim in 1962 that plaintiff, in opening a special low-cost milk and sundries store, violated the labor contract, Schedule B, Section 66A which, in the interest of preserving the traditional retail route deliveries—and retail routemen's jobs—provided that employers would not establish, service or deliver to "depots for the purpose of distributing or selling milk," with the exception of certain listed preexisting "milk stations," and of milk stations at nurseries, or other charitable institutions, at which the nursery or charity gave the milk away. The Union put that claim into arbitration with plaintiff but while the arbitration hearings were still going on, the Union, perhaps upset by the opening by other dairies of similar stores, took the strike and picketing action that led to plaintiff's successful appeal to the NLRB's unfair labor practice and enforcement proceedings.

Plaintiff also sought to compel the Union to resume the arbitration, to the exclusion of an industry-wide arbitration that had, meanwhile, been initiated. Chief Judge Zavatt in substance gave that relief (222 F.Supp. 125), but his order was stayed pending appeal upon a stipulation that plaintiff's interests would be unaffected by the industry-wide arbitration.

The industry-wide arbitration ended in May 1964 with the award of a contract term under which "depot" type stores were not forbidden, but under which the Union could obtain redress against employer distribution of milk or milk products in an unreasonable manner or at "unreasonably low prices" (15 U.S. C.A. § 13a), "unreasonableness" to be assayed by standards that included protection of the rival interests (1) of the workers in job security and wages, hours and working conditions and (2) of the public in the continuing availability of various services to it afforded by a variety of methods of milk distribution. After the award, the Union withdrew its appeal from Chief Judge Zavatt's order and the parties discontinued the proceeding to compel resumption of the arbitration, agreeing that plaintiff was not bound by the industry-wide award.

No further effort was made to complete the separate arbitration between the parties. The present action under LMRA § 303 was commenced shortly after the Court of Appeals affirmed and granted

enforcement of the NLRB's determination of the unfair labor practice proceeding adversely to the Union.

Plaintiff insists that its suit is based solely on the statutory wrong, that only a judicial, as distinguished from an arbitral, jurisdiction is established by LMRA § 303, that the arbitration clause is not in fact broad enough to reach the statutory wrong here involved, and that, in any event, a contract arbitration clause is not competent to require arbitration of the purely statutory and non-contractual wrongs defined by NLRA § 8(b) (4) (i) and (ii) (B), which are judicially implemented by LMRA § 303, and are set in sharp statutory contrast to the purely contractual and hence arbitrable subject matter of LMRA § 301. Twin Excavating Co. v. Local Union No. 731, etc., 7th Cir. 1964, 337 F.2d 437; United States Steel Corporation v. Seafarers' International Union, etc., E.D.Pa.1965, 237 F. Supp. 529.

The Union argues that the arbitration clause does in fact embrace and is legally competent to embrace the unfair labor practice here involved and that compulsory arbitration even of an LMRA § 303 claim is within the policy expressed by Drake Bakeries, Inc. v. Local 50, etc., 1962, 370 U.S. 254, 263–266, 82 S.Ct. 1346, 8 L.Ed.2d 474 and by LMRA § 203(d) ["adjustment by a method agreed upon by the parties is declared * * * the desirable method for settlement of *grievance disputes arising over the application or interpretation of an existing collective-bargaining agreement*" (emphasis added)].

■ The arbitration clause is resolutely broad. The dispute, although the business injury it caused is remediable purely as a statutory tort, arises out of the contract relation not only because it centered on the "depot" clause in the contract, but also because Section 17 contained a no-strike clause and forbade the Union to "call, sanction or enforce any sympathetic strike of its members"; Section 17 also required the employer not to "aid other companies in any fight that may be waged against the Union."

Whether or not plaintiff could at its election have sued on the contract as for a breach of it under LMRA § 301, plaintiff's present statutory action, viewed as such and not as "arguably" a contract claim as well, presents a dispute or controversy that is connected with the contract, its interpretation and application and is germane to the subject matter of the contract. Cf. Robert Lawrence Co. v. Devonshire Fabrics, Inc., 2d Cir. 1959, 271 F.2d 402, 410–412; Almacenes Fernandez, S. A. v. Golodetz, 2d Cir. 1945, 148 F.2d 625, 628–629; Robinson v. Bache & Co., S.D.N.Y.1964, 227 F.Supp. 456, 458; Saucy Susan Products, Inc. v. Allied Old English, Inc., S.D.N.Y. 1961, 200 F.Supp. 724, 727–728; Ghiron v. Mayr, 1st Dept. 1963, 19 App.Div.2d 54, 241 N.Y.S.2d 144; Siegel v. Ribak, Kings Co. 1964, 43 Misc.2d 7, 249 N.Y.S. 2d 903. Cf. Jackson v. Atlantic City Electric Co., D.N.J.1956, 144 F.Supp. 551; Metal Polishers, etc. v. Rubin, E.D. Pa.1949, 85 F.Supp. 363. The Arbitration Act does not require (9 U.S.C.A. § 2), nor does principle require, that an arbitration clause be confined to arbitration of breaches of the contract in which the agreement to arbitrate is contained; if there is a limitation on the scope of legally enforceable arbitration agreements, it operates in terms of specificity of subject matter [6A Corbin, Contracts (1962) 392, § 1433] and not in terms that result in confining arbitration to claims for breach of contract. Here, the clause is broad but has specificity in its limitation to matters connected with the collective bargaining relation.

■ If the declared policy favoring arbitration of labor-management disputes (Drake Bakeries, Inc. v. Local 50, etc., supra; United Steelworkers of America v. Warrior & Gulf Nav. Co., 1960, 363 U.S. 574, 577–578, 581–583, 80 S.Ct. 1347, 4 L.Ed.2d 1409) were limited to cases over the interpretation and application of collective bargaining agreements [cf. LMRA § 203(d)], it could not be said with certainty to reach the present case, nor could any arbitration of strike damages, conducted after the

strike ended, be supposed to fulfill that part of the policy favoring labor arbitration that rests on a view of arbitration as furnishing a direct substitute for industrial strife (United Steelworkers of America v. Warrior & Gulf Nav. Co., supra, 363 U.S. at 578, 80 S.Ct. 1347). But the policy is not framed that narrowly, and, even in the absence of an affirmative labor law policy favoring arbitration of the present sort of dispute, there would remain the homelier point that the agreement to arbitrate is valid and enforceable (although not additionally favored by a special subject matter policy) simply as an agreement to arbitrate matters that it is lawful to agree to arbitrate, notwithstanding the implicit "waiver" of a statutory remedial procedure. Cf. Wilko v. Swan, 1953, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168; Moseley v. Electronic & Missile Facilities, Inc., 374 U.S. 167, 171–173, 83 S.Ct. 1815, 10 L.Ed.2d 818; Leesona Corp. v. Cotwool Mfg. Corp., etc., W.D.S.C.1962, 204 F.Supp. 141, 143, apparently disapproved in affirming result, 4th Cir. 1963, 315 F.2d 538, 542; Matter of Gale, N. Y. Co. 1941, 176 Misc. 277, 27 N.Y.S.2d 18. Contrast Reader v. Hirsch & Co., S.D.N.Y.1961, 197 F.Supp. 111. In the present case arbitration works no waiver of policy protections. The procedures of the NLRB under Section 8(b) (4) (i) and (ii) are unimpaired, may be set in motion by plaintiff's complaint although plaintiff also presses its private demand in court (or in arbitration) under LMRA § 303, and the NLRB proceeding need not be affected in any way by what occurs in an arbitration of the same issue. Cf. Internat'l Longshoremen's & Warehousemen's Union v. Juneau Spruce Corp., 1952, 342 U.S. 237, 243–244, 72 S.Ct. 235, 96 L.Ed. 275; Carey v. Westinghouse Electric Corp., 1964, 375 U.S. 261, 270–272, 84 S.Ct. 401, 11 L.Ed.2d 320; Ramsey v. N.L.R.B., 7th Cir. 1964, 327 F.2d 784. If an unfair labor practice coincides with a contract breach, there appears to be no hesitation in permitting two proceedings to go forward, an unfair labor practice proceeding and an arbitration, as in the Ramsey case, and in United States Steel Corp. v. Seafarers' International Union, etc., E.D.Pa.1965, 237 F.Supp. 529, the Court ordered an arbitration that, it contemplated, might be a complete defense to an LMRA § 303 claim that counted on some of the same operative facts. If the labor legislation is hospitable to the concurrency of arbitral or of state judicial determinations with NLRB determinations in unfair labor practice proceedings on the same issues (Carey v. Westinghouse Electric Corp., supra, 375 U.S. at 272, 84 S.Ct. 401; Smith v. Evening News Ass'n, 1962, 371 U.S. 195, 197–198, 83 S.Ct. 267, 9 L.Ed.2d 246; N.L.R.B. v. Local 282, etc., 2d Cir. 1965, 344 F.2d 649, 652), there is no ground for concluding that any labor law policy forbids arbitration of a strike damage claim brought under LMRA § 303, but countenances arbitration of it if it is framed also as a claim under LMRA § 301. Cf. United States Steel Corp. v. Seafarers' International Union, supra. In this field of law, the policy impregnated preemption is preemption of judicial proceedings by NLRB proceedings (San Diego Bldg. Trades Council, etc. v. Garmon, 1959, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775), and where, as here, that preemption is inoperative, there is no policy reason for boggling at arbitration, particularly since arbitration is itself a preferred mode of resolving labor disputes. Cf. Trailways of New England, Inc. v. Amalgamated Ass'n of Street Electric Ry. and Motor Coach Employees of America, etc., 1st Cir. 1965, 343 F.2d 815, 818.

Twin Excavating Co. v. Local Union No. 731, etc., 7th Cir. 1964, 337 F.2d 437 appears in dictum to imply that a claim under LMRA § 303 is not arbitrable, but the point is not elaborated, if it is being made, and it appears to be related to an assumption that only contract violations are arbitrable. A similar assumption may seem to lurk, unarticulated, in United States Steel Corporation v. Seafarers' International Union, supra, but the Court ordered arbitration of a typical secondary boycott claim in so far as it was framed

under LMRA § 301 and allowed the case to continue (for pre-trial proceeding purposes) insofar as it was framed under LMRA § 303, indicating, however, that the § 303 trial would be delayed until after the arbitration was over, so that the award could be considered in rendering judgment on the § 303 count (237 F. Supp. at 533); it appears plain that if the § 303 count embraced only the facts that underlay the § 301 count, the Court would not grant additional relief under § 303 (237 F.Supp. at 531 and fn. 3); the Court appears, thus, to have been saving out any purely statutory tort claim of § 303 to the extent that it did not duplicate the contract claim of § 301, and the Court was doing that because the arbitration clause was limited to contract claims; in express deference to the policy favoring arbitration, the Court refused to withhold enforcement of the arbitration clause, rejecting the argument that the particular breach was an unfair labor practice and, as such, not arbitrable. The Court's ultimate action seems to have turned on the fact that there was no agreement to arbitrate the § 303 claim so far as it was purely statutory and not contractual; its action did not depend on any conclusion that there could not be an agreement to arbitrate the statutory wrong as such; rather, the Court distinguished the Twin Excavating case in part on the ground that "the § 303 action upon which the Twin Excavating suit was predicated was not embraced in the arbitration agreement" (237 F.Supp. at 532).

The agreement to arbitrate is, therefore, enforceable even though it results in requiring plaintiff to arbitrate an unfair labor practice claim under LMRA § 303. Defendant has not lost the right to arbitrate by delay or waiver. It has moved to stay the present action in good season; the failure to pursue the earlier arbitration if it could properly have extended to reach the present claim, is so obscured in the mists of the parties' 1963 and 1964 strategy that it can not be thought to bear on the arbitrability today

of the claim presented by plaintiff's complaint.

Accordingly, on defendant's motion, it is

Ordered that the action and all proceedings in it be and they hereby are stayed pending arbitration of the claims presented by the complaint pursuant to the provisions of Section 16 of the Milk Industry Collective Bargaining Agreement (October 24, 1961 to October 24, 1963).