**OLD DUTCH FARMS, INC., Appellant,**

v.

**MILK DRIVERS AND DAIRY EM-
PLOYEES LOCAL UNION NO. 584, IN-
TERNATIONAL BROTHERHOOD OF
TEAMSTERS, CHAUFFEURS, WARE-
HOUSEMEN AND HELPERS OF
AMERICA, Appellee.**

**No. 246, Docket 30076.**

United States Court of Appeals
Second Circuit.

Argued Feb. 24, 1966.

Decided March 31, 1966.

Herbert L. Maltinsky, Marcus, Maltinsky & Marcus, Brooklyn, N. Y., for appellant.

Samuel J. Cohen, Cohen & Weiss, New York City, Bruce H. Simon, Robert S. Savelson, New York City, of counsel, for appellee.

Before WATERMAN, MOORE and FRIENDLY, Circuit Judges.

MOORE, Circuit Judge.

The appellee, Milk Drivers and Dairy Employees Local Union No. 584 (the union), is the collective bargaining representative for employees working in the New York metropolitan area milk industry. The union and the appellant, Old Dutch Farms, Inc. (the employer), were parties to an industry-wide collective bargaining agreement. In December 1962, a dispute arose between the employer and the union concerning whether the employer, by opening a milk "depot" in Brooklyn for the retail sale of milk and milk products, had violated Section 66A of the collective bargaining agreement.[1] This dispute was submitted to arbitration in the spring of 1963 pursuant to arbitration procedures provided for in the collective agreement. Subsequently, in May 1963, the union proceeded to induce employees of a neutral employer (a supplier of Old Dutch Farms, Inc.) to engage in work stoppages, and to threaten such employer, in an effort to cause such employer to

1. § 66A of the collective agreement provides in relevant part that "it shall be a violation of this agreement for any party * * * to sell or distribute milk retail from wholesale trucks, or for employers to establish, service, or deliver to depots for the purpose of distributing or selling milk."

cease doing business with Old Dutch Farms, Inc. Thereafter, Old Dutch Farms, Inc. filed a petition with the National Labor Relations Board (the NLRB) alleging that the union was engaged in unlawful secondary activity. On October 9, 1963, the NLRB held that the union had violated Section 8(b) (4) (i) & (ii) (B) of the Labor Management Relations Act (the LMRA), 29 U.S.C.A. § 158(b) (4) (i) & (ii) (B), 146 NLRB 509 (1964), and its decision was enforced by this court in January 1965. NLRB v. Milk Drivers & Dairy Employees Local Union No. 584, 341 F.2d 29 (2d Cir. 1965).

■ In March 1965 the employer commenced the present action in the United States District Court for the Eastern District of New York, pursuant to Section 303 [2] to collect damages for business injuries sustained as a result of the union's allegedly unlawful activity. The union made a motion to stay all proceedings in the action pending arbitration of the damage claim on the ground that the disputes came within the purview of the general arbitration clause contained in the collective agreement. The arbitration clause provided that "any and all disputes and controversies arising under or in connection with the terms and provisions of this agreement, or in connection with or relating to the application or interpretation of any of the terms or provisions hereof, or in respect to anything not herein, expressly provided but germane to the subject matter of this agreement * * * shall be submitted for arbitration to an arbitrator * * *" The trial court granted the motion finding that the employer's statutory action presented a controversy which was "within the inclusive description of the arbitrable disputes," 243 F.Supp. 246, 247, set forth in the arbitration clause and concluded that "the dispute * * * arises out of the contract relation not only because it centered on the 'depot' clause in the contract, but also because Section 17 contained a no-strike clause which forbade the Union to 'call * * * any sympathetic strike of its members * * *'" 243 F.Supp. 246, 248. We reverse on the ground that the employer is not precluded by the arbitration clause in the parties' collective agreement from asserting in the district court a claim for tort damages based on the alleged unlawful secondary activity of the union and forced to rely upon arbitration for relief.

■ It is well established that whether an employer is required to arbitrate, as well as what issues he must arbitrate, "is a matter to be determined by the Court on the basis of the contract entered into by the parties." Atkinson v. Sinclair Refining Co., 370 U.S. 238, 241, 82 S.Ct. 1318, 1320, 8 L.Ed.2d 462 (1962). Moreover, an employer "cannot be required to submit to arbitration any dispute which he has not agreed so to submit." United Steelworkers of America v. Warrior & Gulf Nav. Co., 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960); see John Wiley & Sons v. Livingston, 376 U.S. 543, 547, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964). Thus, the principal issue raised by this appeal is whether the employer's tort damage claim constitutes an arbitrable issue within the meaning of the broad arbitration clause con-

---

**2.** § 303 of the LMRA, 29 U.S.C. § 187 provides:

    (a) It shall be unlawful, for the purpose of this section only, in an industry or activity affecting commerce, for any labor organization to engage in any activity or conduct defined as an unfair labor practice in section 8(b) (4) of the National Labor Relations Act, as amended.

    (b) Whoever shall be injured in his business or property by reason of any violation of subsection (a) may sue therefor in any district court of the United States subject to the limitations and provisions of Section 301 hereof without respect to the amount in controversy, or in any other court having jurisdiction of the parties, and shall recover the damages by him sustained and the cost of the suit.

tained in the parties' collective bargaining agreement.[3]

■■ This action arises under Section 303(a) and (b). It is in no way based on an alleged breach of contract and neither invokes nor needs to invoke the contract. The employer asserts that it was "injured in its business or property" and seeks damages solely for the injuries caused by the union's allegedly unlawful activity. Both the union and the district court maintain, however, that the employer's tort damage claim is an arbitrable dispute on the ground that it is connected with and "germane to the subject matter of" the collective agreement. Their theory is that the dispute is intimately related to Section 66A of the collective agreement since the business injury which forms the basis for the employer's Section 303 damage claim was caused by union activity which was originally provoked by an alleged breach of that section. They argue that since the union's secondary activity constituted a response to an alleged breach of contract by the employer, the damage claim is inextricably connected with the interpretation of the contract provision which it allegedly violated. But, this action bears no meaningful connection with the terms, conditions or subject matter of the parties' collective bargaining agreement. The fact that the union activity which forms the basis for this Section 303 damage suit was provoked by an alleged breach of contract by the employer is no reason to conclude that this suit arises under or is connected with the interpretation of the collective agreement within the meaning of the arbitration clause. This is so, not only because this suit rests solely on Section 303 and cannot be considered as a contract claim[4] but, more significantly, because whether or not the

employer violated Section 66A of the collective agreement has no bearing on the validity of the Section 303 suit and the determination of the issues it presents, *viz.*, whether the union violated Section 8(b)(4) of the NLRA and whether and to what extent the employer sustained actual damages as a result of the union activity. Quite apart from the agreement and its arbitration clause, the present action arises under the terms and conditions of specific federal labor statutes, i. e., Section 303 of the LMRA and Section 8(b)(4) of the NLRA and is concerned only with their interpretation and application. Moreover, nothing in the broad arbitration clause involved here commits to arbitration disputes which are unrelated to the interpretation of particular provisions of the collective agreement or to the subject matter of the agreement. It cannot be said that the present dispute is germane, i. e., relevant, see Webster's New International Dictionary (2d ed. 1961), to the subject matter of the collective agreement for there is no indication either in the record or in the contract itself that the subject of tort damages suffered by either party to the contract ever was discussed or referred to by the parties when they negotiated their industrial code. Reason dictates that for a dispute to be characterized as germane to the subject matter of the contract it must at the very least raise some issue, the resolution of which requires a reference to, or construction of, some portion of the contract involved. Thus, "whatever other effect the agreement to arbitrate may have had, the agreement did not even suggest that the question of violation (or not) of § 303 was arbitrable." United States Steel Corp. v. Seafarers' International Union, 237 F.Supp. 529, 532 (E.D.Pa.1965). In *Seafarers' International Union,* supra, the court in

---

3. It should be noted that the present suit constitutes a special case under § 303 in that there is a contractual relationship between the parties to the suit. § 303 provides an employer with a federal right to sue any union that damages him by engaging in activity proscribed by § 8(b)(4) irrespective of whether a contractual relationship exists between them.

4. Judge Dooling's partial reliance on the no-strike clause in the parties' collective agreement to support his conclusion that the present action arose under the contract is erroneous. 243 F.Supp. 246, 248 (E.D.N.Y.1965). This action is not based in any way on an alleged violation of that clause by the union or, for that matter, on any violation of the contract by the union.

like manner dismissed a motion to stay a Section 303 damage claim pending arbitration, although it was admittedly confronted with a narrower arbitration clause than the one involved here. There the union argued that the employer's Section 303 damage claim should be submitted to arbitration on the basis of an arbitration clause which provided that "any alleged violations or disputes arising under this Agreement" shall be submitted to an arbitrator. The court concluded that the Section 303 action was not embraced in the arbitration agreement and, thus, refused to order arbitration pointing out that "parties cannot be compelled to go to arbitration on issues which they have not agreed to submit to arbitration." Id. at 532. See Twin Excavating Co. v. Local Union No. 731, 337 F.2d 437 (7th Cir. 1964).[5]

■■■ There is a strong national labor policy favoring arbitration as a means of resolving disputes between parties to collective bargaining agreements concerning the interpretation or application of those agreements and, as a result, arbitration clauses that relate to such disputes should be liberally construed. E. g., United Steelworkers of America v. Warrior & Gulf Nav. Co., supra; see Smith & Jones, The Supreme Court and Labor Dispute Arbitration: The Emerging Federal Law, 63 Mich.L.Rev. 751, 752–768 (1965); cf. Section 203(d) of the LMRA,

29 U.S.C. § 173(d).[6] Contrary to the union's position, however, such principles do not have any direct bearing on the issue presented here since they were formulated in the context of actions arising under Section 301(a), which authorizes suits for the violation of collective bargaining contracts, 29 U.S.C. § 185(a), and pertain to the desirability of *contract* arbitration as a means for insuring industrial peace. The interpretation and application of the terms of a collective bargaining agreement is a function that traditionally has been considered to be within the peculiar province of labor arbitrators and, therefore, it is reasonable to presume that when parties to a collective agreement insert a broad arbitration clause in it, they intend all disputes which require performance of that function to be determined by an arbitrator, unless they specifically exclude them from arbitration. Such reasoning, however, does not apply with equal force to suits, like the present one, which arise under Section 303 since the issues raised in such a proceeding are the kind which have traditionally been determined by courts and concern matters to which the expertise of labor arbitrators does not necessarily extend.

■■■ The resolution of the present controversy requires (1) a determination of whether the union violated Section 8(b) (4) of the NLRA,[7] and (2) an assess-

---

5. In *Twin Excavating Co.*, the Seventh Circuit affirmed the denial of a motion to stay a § 303 suit pending arbitration. The rationale of the court, however, does not clearly emerge from its two-page opinion. On one hand, the court raised serious questions about the validity of the arbitration clause in the collective agreement invoked by the union and, thus, its comments with respect to the arbitrability of § 303 claims can justifiably be treated as dictum. On the other hand, the decision can be construed as saying that the usual arbitration clause contained in collective agreements is not broad enough to encompass an action under § 303, for the court stated the issue before it as whether the LMRA "contemplated an arbitration proceeding as a substitute for a court hearing in a suit for damages under § 303," id. at 438, and the arbitration clause

before the court provided only that all the conditions and articles of the collective agreement were to be enforced by a committee selected by the parties to the contract.

6. § 203(d) of the LMRA, 29 U.S.C. § 173 (d), provides in relevant part:
Final adjustment by a method agreed upon by the parties is declared to be the desirable method for settlement of *grievance disputes arising over the application or interpretation of an existing collective-bargaining agreement.* (Emphasis added.)

7. Prior to the commencement of this action, the NLRB determined that the union had violated § 8(b) (4) of the NLRA. It should be noted, however, that a prior determination by the Board is not a pre-

ment of the actual business injuries sustained by the employer. Courts hardly can be considered less competent than a labor arbitrator, whose forte is more likely to be in the area of contract disputes and "employee's grievance claims * * *," Drake Bakeries v. Local 50, 370 U.S. 254, 267, 82 S.Ct. 1346, 8 L.Ed. 2d 474 (1962) (Harlan, J., dissenting), to determine whether particular union activities violate a federal labor statute or to assess the extent of an employer's business injuries. See Fleming, Arbitrators and the Remedy Power, 48 Va.L. Rev. 1199, 1220 (1962). Thus, there is no special reason to presume that the parties to a collective bargaining contract desire to submit to an arbitrator disputes concerned with an employer's statutory right to recover damages caused by specific union unfair labor practices which is entirely separate from any right conferred on him by Section 301, see United Const. Workers, etc. v. Laburnum Const. Corp., 347 U.S. 656, 665–667, 74 S.Ct. 833, 98 L.Ed. 1025 (1954); 2 Legis. History of the Labor Management Relations Act of 1947, 1371–1372 (1948). "The less so, from the standpoint of the employer, when it is recognized that any damages awarded by an arbitrator would not be self-enforcing." Drake Bakeries v. Local 50, supra, 370 U.S. at 268, 82 S. Ct. at 1354 (Harlan, J., dissenting). This leads to the conclusion that absent a clear, explicit statement in the collective bargaining contract directing an arbitra-

tor to hear and determine the validity of tort damage claims by one party against another, it must be assumed that the employer did not intend to forego his rights under Section 303 and that the parties did not intend to withdraw such disputes from judicial scrutiny.

The Supreme Court's decision in Drake Bakeries v. Local 50, 370 U.S. 254, 82 S.Ct. 1346 (1962), holding that a claim for damages based on a breach of a no-strike provision in a collective bargaining agreement under Section 301 should be submitted to arbitration does not suggest a contrary result. Although as a result of that decision the arbitrator may be called on to assess contract damages (assuming he finds that the parties intended to delegate that function to him), the primary question submitted to the arbitrator in *Drake Bakeries* was whether the strike activity on the part of the union violated a no-strike provision in the collective bargaining contract—a question which the Court stated "appears to us to be one particularly suited for arbitration." Id. at 266, 82 S.Ct. at 1353. In other words, whether the employer was entitled to contract damages turned on a question of contract interpretation which "was peculiarly within the expertise of an arbitrator." Smith & Jones, supra, at 767.[8] By direct contrast, the present suit under Section 303 does not raise any question of contract interpretation which can be characterized as particularly suited for arbitration. Rather, the validity of

---

requisite to an action by an employer under § 303. The administrative and judicial actions and remedies are viewed as entirely independent, i. e., § 303 suits constitute a clear exception to the exclusive jurisdiction of the NLRB over alleged unfair labor practices. E. g., International Longshoremen's & Warehousemen's Union v. Juneau Spruce Corp., 342 U.S. 237, 72 S.Ct. 235, 96 L.Ed. 275 (1952); Note, 40 Ind.L.Rev. 55 (1964); see Local 20, Teamsters, etc. v. Morton, 377 U.S. 252, 258–259 n. 13, 84 S.Ct. 1253, 12 L.Ed. 2d 280 (1964); Sovern, Section 301 and the Primary Jurisdiction of the NLRB, 76 Harv.L.Rev. 529, 549–550 (1963). Moreover, an administrative determination, such as the one involved here, does not bind the court confronted with the question of whether particular union ac-

tivity violated § 8(b) (4) in a § 303 suit. Compare NLRB v. Deena Artware, Inc., 198 F.2d 645 (6th Cir. 1952), cert. denied, 345 U.S. 906, 73 S.Ct. 644, 97 L.Ed. 1342 (1953), with United Brick & Clay Workers of America v. Deena Artware, Inc., 198 F.2d 637 (6th Cir.), cert. denied, 344 U.S. 897, 73 S.Ct. 277, 97 L.Ed. 694 (1952).

8. Moreover, it has been pointed out that *Drake Bakeries* does not indicate how the Court would react to the questions "of arbitrability and arbitral authority under a bilateral arbitration provision where there is clearly a breach of the no-strike clause and the only issue concerns the nature of the remedy." Smith & Jones, supra, at 768.

**604**

the employer's claim for tort damages turns solely on issues which are particularly suited for judicial adjudication.

Since nothing in the record or collective agreement involved here provides a basis for finding that the employer and the union agreed to submit the employer's damage claim to an arbitrator, we reverse the decision of the district court.